**Kristy M. MARKEY, Appellee,**

v.

**Joseph Dale CARNEY, Appellant.**

No. 04–0519.

Supreme Court of Iowa.

Oct. 14, 2005.

Patrick H. Payton of Payton & Assocs., P.C., Des Moines, for appellant.

Frank Steinbach of McEnroe, McCarthey & Gotsdiner, P.C., West Des Moines, for appellee.

CADY, Justice.

This appeal from an order establishing paternity and support of a child provides an opportunity for us to consider two areas of uncertainty in our law regarding child support. First, we consider the manner in which extra income is to be used in determining child support. Second, we consider the general approach to be followed to arrive at the amount of back child support due when a parent has failed to pay for an extended period of time. In addition, we consider whether and to what extent a party's legal insurance policy impacts a potential attorney fee award. For the reasons set forth in this opinion, we vacate the decision of the court of appeals and affirm the judgment of the district court as modified. We also remand the case to the district court to determine the amount of the appellee's attorney fees and enter judgment in her favor for that amount.

## I. Background Facts and Proceedings

Kristy Markey and Joseph Carney grew up in Winterset. They had known each other since Kristy was in grade school. Their two families were friends. Joseph was a few years older than Kristy, and Kristy was a close friend and classmate of Joseph's younger sister. Kristy and Joseph never dated, but maintained an amicable relationship over the years.

Kristy married Scott Cox in 1991, a few years after she left high school. They had two children and were divorced in June 1996. This followed an eighteen-month separation.

On May 19, 1996, Kristy attended a party at Joseph's sister's house in Des Moines. Joseph also attended the party, and the two found themselves in Kristy's motel room the next morning. They engaged in sexual intercourse for the first and only time. Joseph spoke to Kristy a

few times in the weeks that followed, but the two did not see each other again.

Kristy learned she was pregnant in July 1996. She was confident that Joseph was the father and first informed Joseph's sister and mother, who greeted the news with happiness. Joseph, however, did not. He distanced himself from Kristy and soon began a relationship with another woman. Nevertheless, the Carney family supported Kristy throughout her pregnancy.

Kristy gave birth to a boy on February 12, 1997. She named the child Dylan. Joseph's sister and mother continued to maintain contact with Kristy, and even gave a baby shower on her behalf. The Carney family also maintained regular contact with Dylan. On the other hand, Joseph had no contact with the child, or with Kristy. After a period of time, the relationship between Kristy and the Carney family became strained and eventually ended.

Kristy is employed in an accounting department of a Des Moines business, and earns $31,200 annually. She has supported Dylan since birth. Joseph has never provided any support, and he questioned whether he was the biological father.

Joseph is now married and has a child from the marriage. He is employed as the manager of an automobile transmission repair company in Coralville. His base salary is $25,000. He is also capable of earning additional income in the form of commissions from the sale of abandoned cars. The company repairs the transmission of abandoned cars and sells the cars to the public. In 2003, Joseph earned $4584 in commissions in addition to his base salary. Joseph's wife is also employed.

Joseph was employed since Dylan was born, except in 1998, when he suffered a medical condition that prevented him from working. In the three years prior to his employment at the transmission company, Joseph worked as a car salesman and earned an average annual salary of nearly $50,000.

Kristy contacted several lawyers for the purpose of pursuing a support action against Joseph in the years prior to the filing of this case. However, she did not have enough money to pay the required retainer to obtain their services. She also contacted the state child support recovery office. Kristy claimed she was told that they could not file an enforcement action against Joseph because of the legal presumption that Kristy's former husband was the father of Dylan.

In 2002, Kristy had an opportunity to enroll in a prepaid legal services plan through her employer. She then retained the services of an attorney, and she filed the present action to establish paternity and support in November 2002. Even with the plan, Kristy has been required to pay approximately $2000 in fees and costs up to the time of trial.

Paternity tests were performed after the petition was filed. The tests revealed a 99.99% probability that Joseph was Dylan's father. Following a trial on February 28, 2004, the court entered an order establishing Joseph as Dylan's father, granting sole custody and physical custody of Dylan to Kristy, setting Joseph's monthly child support obligation at $425, entering a judgment against Joseph for $21,000 in back child support, apportioning the responsibility for Dylan's uncovered medical expenses exceeding $250 per year, and awarding Kristy attorney fees.

Joseph appealed. We transferred the case to the court of appeals. The court of appeals affirmed the district court order, and Joseph sought further review.

## II. Standard of Review

■ Generally, in paternity actions, we review issues "ancillary to the question of paternity, such as support," de novo. *Dye v. Geiger,* 554 N.W.2d 538, 539 (Iowa 1996) (citing *Mason v. Hall,* 419 N.W.2d 367, 369 (Iowa 1988)).

## III. Monthly Child Support

A child support obligation is required to be set in a paternity action pursuant to the Uniform Child Support Guidelines. *See* Iowa Code § 600B.25(1) (2001) (directing support to be set pursuant to section 598.21(4)); *id.* § 598.21(4) (directing the supreme court to maintain uniform child support guidelines). A rebuttable presumption exists that the guidelines determine the correct amount of the monthly support obligation. *Id.* § 598.21(4)(a). Additionally, the court "may" order a back child support obligation. *Id.* § 600B.25(1).

The guidelines establish the amount of child support largely by determining the "net monthly income" of each parent derived from their "gross monthly income." *See* Iowa Ct. R. 9.26 (setting forth the guidelines); *id.* R. 9.5 (defining net monthly income). Except in cases involving high incomes, and some other instances supporting a deviation from the guidelines, a chart is used to determine the amount of monthly child support based upon a predetermined percent of the parents' net monthly income. *Id.* R. 9.2. Of course, the guidelines work to meet the goal of establishing adequate support for a child only if the correct figures are used to arrive at the "net monthly income."

■ "Net monthly income" under the guidelines is determined by first establishing gross income. *See id.* R. 9.5 (stating net monthly income is gross monthly income minus applicable deductions). The guidelines do not define gross income, but we have on a number of occasions included such items as overtime income, incentive pay, and bonuses as gross income. *See State ex rel. Hammons v. Burge,* 503 N.W.2d 413, 415 (Iowa 1993) (incentive pay); *In re Marriage of Brown,* 487 N.W.2d 331, 333 (Iowa 1992) (overtime); *In re Marriage of Lalone,* 469 N.W.2d 695, 698 (Iowa 1991) (bonus). In each instance, the key to including the item of extra income primarily focused on whether it was reasonably expected to be received in the future. *See Seymour v. Hunter,* 603 N.W.2d 625, 626 (Iowa 1999) ("Income, for purposes of guidelines, need not be guaranteed. History over recent years is the best test of whether such a payment is expected or speculative."). If extra income is uncertain or speculative, or if it is an anomaly, it is excluded. *In re Marriage of Brown,* 487 N.W.2d at 333. If it is reasonably expected to be received, then it should be included in gross monthly income by averaging the extra income over a reasonable period of time so the amount included fairly reflects the amount that will be received. *See Seymour,* 603 N.W.2d at 626 ("[T]he court should consider and average them as earnings over recent years and decide whether the receipt of an annual payment should be reasonably expected."). The same approach should be applied to extra income in the form of commissions in this case.

■ Joseph argues that Kristy failed to prove the commissions were reasonably expected to be received. He points out that Kristy only presented evidence of extra income for one year, with no circumstances concerning any certain future expectation. Nevertheless, once evidence of extra income has been introduced, we think the burden is on the recipient of the income to establish that it should be excluded from gross income as uncertain and speculative. In *In re Marriage of Brown,*

we said that overtime wages are included in gross income unless circumstances show the wages are an anomaly or speculative. *See In re Marriage of Brown,* 487 N.W.2d at 333 ("Overtime wages *are* within the definition of gross income to be used in calculating net monthly income for child support purposes. This conclusion does not *necessarily* mean, however, that a court must steadfastly adhere to the appropriate child support amount as determined by the guidelines using overtime pay if the amount results in injustice between the parties.... [I]n circumstances where overtime pay appears to be an anomaly or is uncertain or speculative, a deviation from the child support guidelines *may* be appropriate." (Citation omitted; emphasis added.)). The recipient of extra income is in the best position to present the underlying circumstances to the court, which makes it fair to place the burden on the recipient to show the extra income should be excluded or considered in some other manner. *See* 2 John W. Strong et al., *McCormick on Evidence* § 337, at 413 (5th ed. 1999).

■ Thus, we must determine whether Joseph carried his burden to prove his commission was anomalous, uncertain, or speculative. Joseph did not present any evidence of how long he has been working at the transmission business, how many abandoned cars he has sold while working there, or how often people abandoned cars that were repaired and sold. He did not introduce any tax returns or records to show commissions in years other than 2003. There is simply no evidence from which we can "decide whether the receipt of [a commission] should be reasonably expected." *Seymour,* 603 N.W.2d at 626. The only testimony in the record on the issue is:

> Q. There is no assurance you are going to make $29,000 this coming year?

A. No.

> Q. The most you can expect from your regular job is $25,000? Is that correct?

A. Yes.

This testimony, standing alone, is insufficient. *Cf. In re Marriage of Schriner,* 695 N.W.2d 493, 501 (Iowa 2005) (finding alimony payor's testimony that his continued receipt of overtime was uncertain was insufficient to exclude overtime pay from the calculation of the amount payable). The district court included the commission in Joseph's income in calculating child support, so it apparently did not find convincing his testimony that his continued receipt of commission was speculative. *Cf. id.* (noting district court must have discredited payor's testimony that overtime income was uncertain because it included it in total income). "We give weight to the district court's findings of fact, especially with regard to credibility of witnesses." *Id.* (citing *Geisinger v. Geisinger,* 202 N.W.2d 44, 46 (Iowa 1972)).

> While [Joseph's commission] may in fact decrease or cease in the future, the fact is that at the time of trial, he was [earning commission], and he presented no evidence that he was unable to continue. Thus, the [commission] was not uncertain or speculative, and the district court properly considered it in setting the amount of [child support].

*Id.* (citation omitted). Joseph is of course free to bring a modification action, in which he can present evidence regarding his commission, to attempt to lower his child support obligation. *Cf. id.* However, on the present record, we must decline to modify the district court's child support award.

## IV. Back Child Support

■ The district court entered two judgments against Joseph for back child

support. One judgment was for $2975. This amount represented seven months of unpaid temporary support that Joseph had failed to pay during the pendency of the paternity action. Joseph did not challenge the $2975 judgment in his application for further review. Moreover, because he cited no authority for why this judgment is erroneous in his appellant's brief, this issue is waived. Iowa R.App. P. 6.14(c).

The second judgment was for $21,000. This amount represented $300 per month in back child support from February 1997, when Dylan was born, to November 2001, when Kristy filed the petition to establish paternity. Joseph argues that Kristy is not entitled to back child support from Dylan's birth until she filed the paternity suit because she waited six years before attempting to collect child support. He argues the doctrines of estoppel, waiver, and laches bar her claim to back child support.

## A. Estoppel and Waiver

■■■ It is unclear whether Joseph asserted the doctrine of equitable estoppel or estoppel by acquiescence as a defense to Kristy's claim to back child support in district court. Equitable estoppel is a common-law affirmative defense "preventing one party who has made certain representations from taking unfair advantage of another when the party making the representations changes its position to the prejudice of the party who relied upon the representations." *ABC Disposal Sys., Inc. v. Dep't of Natural Res.*, 681 N.W.2d 596, 606 (Iowa 2004) (citing *Ahrendsen v. Iowa Dep't of Human Servs.*, 613 N.W.2d 674, 678 (Iowa 2000)). Joseph, as the party asserting the defense, has the burden to prove "by clear and convincing evidence," *id.* (citing *Fencl v. City of Harpers Ferry*, 620 N.W.2d 808, 816 (Iowa 2000)), the following elements:

"(1) a false representation or concealment of material facts; (2) lack of knowledge of the true facts on the part of the actor; (3) the intention that it be acted upon; and (4) reliance thereon by the party to whom made, to his prejudice and injury."

*Id.* (quoting *City of Akron v. Akron–Westfield Cmty. Sch. Dist.*, 659 N.W.2d 223, 226 (Iowa 2003)). " '[E]stoppel by acquiescence occurs when a person knows or ought to know of an entitlement to enforce a right and neglects to do so for such time as would imply an intention to waive or abandon the right.' " *Garrett v. Huster*, 684 N.W.2d 250, 255 (Iowa 2004) (quoting *In re Marriage of Fields*, 508 N.W.2d 730, 731 (Iowa 1993)). "Although this doctrine bears an 'estoppel' label, it is, in reality, a waiver theory." *Westfield Ins. Cos. v. Econ. Fire & Cas. Co.*, 623 N.W.2d 871, 880 (Iowa 2001). Unlike equitable estoppel, estoppel by acquiescence does not require a showing of detrimental reliance or prejudice. *Id.* Estoppel by acquiescence applies when (1) a party "has full knowledge of his rights and the material facts"; (2) "remains inactive for a considerable time"; and (3) acts in a manner that "leads the other party to believe the act [now complained of] has been approved." 28 Am. Jur. 2d *Estoppel and Waiver* § 63, at 489–90 (2000); *accord Anthony v. Anthony*, 204 N.W.2d 829, 834 (Iowa 1973) (stating estoppel by acquiescence "is applicable 'where a person knows or ought to know that he is entitled to enforce his right or to impeach a transaction, and neglects to do so for such a length of time as would imply that he intended to waive or abandon his right' " (quoting *Humboldt Livestock Auction, Inc. v. B & H Cattle Co.*, 261 Iowa 419, 432, 155 N.W.2d 478, 487 (1967))).

■■■ In his answer to Kristy's petition, Joseph appeared to assert the defense of equitable estoppel because he alleged

Kristy falsely told him Dylan was not his child. As previously noted, the first element of equitable estoppel is "'a false representation or concealment of material facts.'" *ABC Disposal Sys., Inc.*, 681 N.W.2d at 606 (citation omitted). However, the record evidence contradicts Joseph's allegation. At trial, Joseph testified that Kristy told him he *was* Dylan's father. Kristy also testified she told Joseph he was Dylan's father. On our de novo review, we conclude Joseph failed to establish the first element of equitable estoppel, "'a false representation or concealment of material facts.'" *Id.* (citation omitted).

▬▬▬ Joseph further asserts the equitable defense of estoppel by acquiescence. However, this defense also fails. Mere silence on the part of the obligee parent, "even for a prolonged period of time, is insufficient evidence ... to bar recovery of child support based on" estoppel by acquiescence. 24A Am. Jur. 2d *Divorce and Separation* § 1064, at 468 (1998). In child support cases, we strive to serve the best interests of the children. Thus, we require some kind of affirmative act, inconsistent with the intention to collect child support, in order to imply the obligee parent intended to waive the right to child support. *See id.*; *see, e.g., Davidson v. Van Lengen*, 266 N.W.2d 436, 440 (Iowa 1978) (finding estoppel by acquiescence when "*[b]y words and actions*, [the mother] led [the father] to believe she intended to waive and abandon her right" to child support (emphasis added)); *Anthony*, 204 N.W.2d at 834 (finding mother explicitly agreed to waive right to child support in exchange for father's agreement not to exercise his visitation rights and that estoppel by acquiescence therefore barred her claim for child support (even though the agreement itself was void as against public policy)). There is no evidence that Kristy did anything of the

sort in this case. Indeed, Joseph's allegation of estoppel in his answer only alleges that Kristy took no action; he does not allege she took any affirmative action inconsistent with her pursuing her right to child support for Dylan. The record shows Kristy only waited until 2002 to file the paternity action because she did not have the financial resources to hire an attorney until then. Joseph cannot establish estoppel by acquiescence on this record.

## B. Laches

▬▬▬ Joseph also argues Kristy's claim for back child support is barred under the closely related doctrine of laches.

Laches is an equitable doctrine premised on unreasonable delay in asserting a right, which causes disadvantage or prejudice to another. The party asserting the defense has the burden to establish all the essential elements thereof by clear, convincing, and satisfactory evidence.

*State ex rel. Holleman v. Stafford*, 584 N.W.2d 242, 245 (Iowa 1998) (citations omitted). Thus, Joseph must establish by clear and convincing evidence: (1) Kristy unreasonably delayed asserting her right to collect back child support from him, and (2) he was prejudiced by the delay. *Id.*

▬▬▬ We begin by considering the element of unreasonable delay. From Dylan's birth in February 1997 until November 2002, when she filed the paternity action, Kristy was a single mother supporting three children. There was evidence that Kristy made an average of $18,257 per year over the six years she delayed bringing suit. She testified that she called several attorneys in 1997, that they all wanted at least $4000 to take her case, and that she could not afford that expense. She was only able to afford to bring the action in 2002 because she pur-

chased prepaid legal insurance, which greatly reduced the expense of the action, and was able to borrow $1100 for her attorney's retainer. Delay in bringing an action may be reasonable when "lack of funds precludes a party from retaining a lawyer to pursue a claim." 27A Am. Jur. 2d *Equity* § 168, at 648 (1996).

We recognize that both the Child Support Recovery Unit, an arm of the Department of Human Services, and the county attorney, are authorized under our statute to pursue claims for paternity and child support. *See* Iowa Code § 252B.2 (child support recovery unit to provide services for recovery of child support); *id.* § 600B.19 (county attorney to prosecute paternity and support actions on behalf of a complainant). Kristy unsuccessfully sought help from the Child Support Recovery Unit, but never sought assistance from the county attorney. Yet, neither the attorneys she contacted nor the Child Support Recovery Unit advised her to pursue an action with the county attorney. Under these circumstances, we cannot conclude that her failure to contact the county attorney constituted unreasonable delay.

We conclude Joseph has failed to prove by clear and convincing evidence that Kristy's delay in bringing the paternity action was unreasonable. Therefore, laches does not apply. *Stafford,* 584 N.W.2d at 245.

Additionally, the prejudice alleged by Joseph was that "the funds he had during the period have been dissipated." However, there was no evidence that this dissipation was causally related to Kristy's delay. *See* 27A Am.Jur.2d *Equity* § 191, at 669 ("[L]aches could apply if a defendant has changed his position in a manner that would not have occurred but for the plaintiff's delay."); *see also Kerrigan v. Kerrigan,* 642 A.2d 1324, 1326 (D.C. 1994) ("One factor to be considered by the court in determining whether laches is applicable in a given case is whether 'the defendant may have changed [his] position in a manner that would not have occurred but for plaintiff's delay.'" (quoting *Gull Airborne Instruments, Inc. v. Weinberger,* 694 F.2d 838, 844 (D.C.Cir.1982))). If the mere fact that past funds had dissipated were enough to establish prejudice, then this element would almost always be satisfied in back child support cases—or in any case, for that matter. *Cf.* 27A Am. Jur. 2d *Equity* § 191, at 669 ("[A]n award of past child support almost always will disturb the financial circumstances and commitments of the obligor[;] this is not the type of undue prejudice from delay that require[s] the application of laches."). Financial changes must be related to the delay in bringing the action to establish prejudice for purposes of laches. *See, e.g., Kerrigan,* 642 A.2d at 1327 (holding father made a prima facie showing of prejudice for laches purposes when "he made medical and educational payments on behalf of his daughter and paid approximately $18,000 for her wedding, which he would not have done without a reduction in the monthly payments"). Further, a party cannot assert the defense of laches if he or she actually benefited from the delay. 27A Am. Jur. 2d *Equity* § 193, at 670. Here, because of Kristy's delay, Joseph had the benefit of funds for five years that he otherwise would have had to pay in child support. Moreover, if Kristy had established Joseph's child support obligation established when Dylan was born in 1997, Joseph's child support obligation would have likely been higher because his income was higher. *See Dep't of Human Servs. v. Bell,* 711 A.2d 1292, 1295 (Me. 1998) (stating laches did not apply in child support recovery action because "had the Department brought the action earlier, Bell's total obligation would have exceeded

that which he owes in the present circumstances"); *In re S.J.F.*, 615 N.W.2d 533, 538 (N.D.2000) (stating benefit of delay inured to the benefit of the obligor because he did not have to pay child support during the period of the delay). In sum, Joseph has failed to show prejudice by clear and convincing evidence, and he cannot avail himself of the defense of laches.

### C. Amount of Back Child Support

■ Unlike a current child support obligation, the guidelines are not used to establish the amount of past child support. Instead, our legislature permits the court to order a parent to pay an amount "the court deems appropriate for the past support and maintenance of the child." Iowa Code § 600B.25(1). This standard permits the court to consider all the surrounding facts and circumstances to determine the amount in light of the purpose of child support and the duty of a parent to pay child support.

■ In considering the circumstances presented by the parties, we believe the analysis should begin with the amount of support that would have been paid under the guidelines if no delay had occurred. This is an important starting point because the guideline amount is based on the usual needs of a child and the ability of parents to contribute to those needs under normal circumstances. Thus, the decision by the legislature not to use the guidelines to set past child support does not mean the guidelines become irrelevant. Notwithstanding, the passage of time can give rise to other circumstances that must be considered in deciding if it is equitable for a parent to pay an amount of past child support that is less than the total sum that should have been paid without the delay.

Kristy relied primarily on the circumstances showing the amount of support Joseph should have paid under the guidelines if a support order had been entered at the time Dylan was born. Based on the income history of the parties, Kristy calculated the average amount of monthly support over those years should have been $429, or a total amount of $30,016.

Joseph focused on his present personal financial circumstances to argue that the total judgment should not exceed $7000. He pointed out that he is married and has a child to support. He also has numerous substantial additional financial obligations, including back income taxes. He asserts the current obligation imposed in the case constitutes a substantial demand on his finances and severely limits his ability to pay back support.

We recognize the circumstances presented by Joseph are properly considered in determining the amount of past child support. Yet, it is also important to recognize that Joseph knew Kristy was confident that he was the biological father of Dylan. Instead of taking action to determine paternity before getting married and having a child, Joseph essentially ignored the situation. *See Callender v. Skiles*, 591 N.W.2d 182, 192 (Iowa 1999) (allowing a biological father standing to establish paternity).

We think the disposition reached by the trial court was proper under all the circumstances. Upon our review of all the circumstances, we find the amount of support determined by the trial court fairly considers the financial burden of paying past child support in conjunction with a current support obligation, while serving to maintain the fundamental and basic obligation of a parent to support a minor child. Both of these important considerations are further addressed by the trial court's decision to structure the obligation as a judgment that is payable at the rate

of $100 a month for an extended period of time. Although Joseph must ultimately pay a substantial portion of the total amount of support he would have paid without the delay, the payment is structured to fairly consider his current financial circumstances.

## V. Uncovered Medical Expenses

In addition to monthly child support, the district court entered an order for the payment of Dylan's medical expenses not covered by insurance. *See* Iowa Ct. R. 9.12 (requiring the court to enter an order for medical support). Kristy, as the custodial parent, is responsible for the first $250 in uncovered medical expenses each year. *See id.* ("The custodial parent shall pay the first $250 per year per child of uncovered medical expenses up to a maximum of $500 per year for all children."). Uncovered medical expenses exceeding $250 per year are then split between Kristy and Joseph in proportion to their respective incomes. *See id.* The district court found that the correct proportion was fifty-one percent for Kristy and forty-nine percent for Joseph.

■ Joseph asserts the district court used the wrong incomes to reach its conclusion that Joseph was responsible for forty-nine percent and Kristy was responsible for fifty-one percent of Dylan's uncovered medical expenses. He claims the court should have used $1616.57 for his net monthly income. However, this would only be his net monthly income if we used $25,000 for his gross annual income—that is, excluded his commission. Because we have already determined his commission should be included, the district court correctly rejected the $1616.57 figure. However, our de novo review of the record reveals that the district court made a mi-

nor error in calculating the appropriate percentages. Kristy's net monthly income was $1858.88, and Joseph's was $1890.35. This means Joseph should be responsible for 50.4% of Dylan's uncovered medical expenses, instead of forty-nine percent, as the district court concluded.[1] Thus, we modify the district court's order and hold each party responsible for fifty percent of Dylan's uncovered medical expenses.

## VI. Attorney Fees

■ The applicable statute provides: "The court may award the prevailing party the reasonable costs of suit, including but not limited to reasonable attorney fees." Iowa Code § 600B.25(1). Thus, "[t]he decision to award attorney fees rests within the sound discretion of the court, and we will not disturb its decision absent a finding of abuse of discretion." *In re Marriage of Rosenfeld,* 668 N.W.2d 840, 849 (Iowa 2003) (stating rule under analogous attorney fee statute, Iowa Code section 598.36 (citing *In re Marriage of Maher,* 596 N.W.2d 561, 568 (Iowa 1999))).

■ The district court ordered Joseph to pay $2500 for Kristy's trial attorney fees. The actual amount of Kristy's total attorney fees, according to her attorney's affidavit and accompanying invoices, was expected to be $2784.93. Joseph claimed the district court abused its discretion in awarding Kristy attorney fees because the award was "unreasonable and unfair for three reasons: (1) the award of attorney fees was punitive; (2) KRISTY had prepaid legal insurance; and (3) KRISTY'S income was sufficient to pay her own attorney fees."

■ Joseph claims the attorney fee award was punitive because the district judge stated,

1. 1890.35 + 1858.88 = 3749.23. 1890.35 / 3749.23 = 50.4%.

"This matter has been unduly long, and it is not [Joseph's current attorney's] fault. But from the outset the pleadings were I want custody of the kid if it is my kid. Therefore, I am going to award the Petitioner $2,500 in attorney fees."

After Joseph learned Dylan was his son through the paternity test, he amended his answer and cross-petitioned for custody and physical care of Dylan, as well as child support from Kristy. Joseph later changed attorneys and amended his cross-petition to seek only joint legal custody and liberal visitation with Dylan. Joseph claims the attorney fee award punished him for exercising his legal rights. However, we view the record to support a showing that Joseph's cross-petition was not made in good faith. The district court is allowed to consider such circumstances and award attorney fees as punishment for bad-faith or dilatory conduct. *See generally Wolf v. Wolf,* 690 N.W.2d 887, 896 (Iowa 2005) (stating common-law attorney fees are appropriate when a party engages in " 'oppression or connivance to harass or injure another' " or " 'conduct that is intentional and likely to be aggravated by cruel and tyrannical motives' " (quoting *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co. of Des Moines, Inc.,* 510 N.W.2d 153, 159–60 (Iowa 1993))).

Joseph also argues that an award of attorney fees to Kristy will result in a "windfall" or would constitute "double dipping" because of the legal-insurance policy. Although the terms of the insurance policy were not disclosed in the record, Kristy testified at trial that she had paid almost two thousand dollars in out-of-pocket attorney fees and costs prior to trial. Furthermore, there was no evidence that she would be reimbursed for her out-of-pocket expenses by her legal insurance carrier. Instead, Kristy testified that her policy only paid a portion of her attorney's normal rate. Thus, the record simply does not support Joseph's argument that an award of attorney fees to Kristy would result in "double dipping" or a "windfall."

Finally, Joseph claims the district court abused its discretion because it did not consider the parties' respective ability to pay. *See In re Marriage of Rosenfeld,* 668 N.W.2d at 849 ("Whether fees ought to be awarded depends, in part, on the ability of the parties to pay." (citing *In re Marriage of Guyer,* 522 N.W.2d 818, 822 (Iowa 1994))). This argument fails because the district court considered, in great detail, the parties' respective financial circumstances in setting the amount of current and back child support in this case. Thus, the court clearly had the parties' abilities to pay in mind when it ordered Joseph to pay Kristy's attorney fees. In sum, the district court did not abuse its discretion, and the award of trial attorney fees should be affirmed.

 On appeal, Kristy requested appellate attorney fees. An award of appellate attorney fees is within the discretion of the appellate court. *In re Marriage of Ask,* 551 N.W.2d 643, 646 (Iowa 1996) (citing *In re Marriage of Gaer,* 476 N.W.2d 324, 326 (Iowa 1991)). Whether such an award is warranted is determined by considering "the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal." *Id.* (citing *In re Marriage of Gaer,* 476 N.W.2d at 326). Considering these factors as applied to the facts of this case, we think an award of appellate attorney fees is appropriate. We accordingly remand the case to the district court to determine the amount of appellate attorney fees paid by Kristy and to enter judgment against Joseph in a reasonable amount. *See Schaffer v. Frank Moyer Constr., Inc.,* 628

N.W.2d 11, 23 (Iowa 2001) ("[U]nder our current practice, the issue of appellate attorney fees is 'frequently determined in the first instance in the district court because of the necessity for making a record.'" (quoting *Lehigh Clay Prods., Ltd. v. Iowa Dep't of Transp.*, 545 N.W.2d 526, 530 n. 2 (Iowa 1996))); *see also GreatAmerica Leasing Corp. v. Cool Comfort Air Conditioning & Refrigeration, Inc.*, 691 N.W.2d 730, 734 (Iowa 2005) (remanding to district court to determine appellate attorney fees); *In re Marriage of McCurnin*, 681 N.W.2d 322, 333 (Iowa 2004) (same).

## VII. Conclusion

The district court properly determined Joseph's monthly child support obligation. Joseph failed to prove his commission was too speculative to include in his income for computing child support under the guidelines.

The district court's award of back child support was appropriate. The equitable defenses asserted by Joseph are not supported by the facts. The amount of back child support awarded by the district court was reasonable and appropriate.

The district court properly included Joseph's commission in his income for purposes of apportioning responsibility for Dylan's uncovered medical expenses. However, the court arrived at the wrong conclusion. We modify the order to hold Joseph responsible for fifty percent of Dylan's uncovered medical expenses exceeding $250 per year.

Finally, the district court did not abuse its discretion in awarding trial attorney fees. Moreover, we remand for entry of a judgment against Joseph and in favor of Kristy for appellate attorney fees.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED; AND CASE REMANDED.**