## IN THE COURT OF APPEALS OF IOWA

No. 13-2083
Filed July 30, 2014

**SEAN FOWLER,**
　　　Plaintiff-Appellant/Cross-Appellee,

**vs.**

**JAMIE MEAD,**
　　　Defendant-Appellee/Cross-Appellant.
_____

　　　Appeal from the Iowa District Court for Clinton County, Mark D. Cleve, Judge.

　　　Sean Fowler appeals, and Jamie Mead cross-appeals, raising issues arising from a child custody ruling. **AFFIRMED ON BOTH APPEALS.**

　　　Constance Peschang Stannard of Johnston, Stannard, Klesner, Burbidge & Fitzgerald, P.L.C., Iowa City, for appellant.

　　　Jennie L. Clausen of H.J. Dane Law Office, Davenport, for appellee.

　　　Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**VAITHESWARAN, P.J.**

This appeal and cross-appeal raise issues arising from a child custody ruling.

## I.    *Background Facts and Proceedings*

Sean Fowler and Jamie Mead met and began a relationship in 2005. They had two children together and Sean acknowledged paternity of a third child of Jamie's.  Sean and Jamie separated in 2012.

Sean petitioned for joint physical care of all three children or, alternatively, physical care.  Jamie answered with her own request for physical care of the children.  The district court entered a stipulated temporary order granting Jamie physical care, subject to Sean's right to visit the younger two children.  Following trial, the court ordered physical care to remain with Jamie and formalized a visitation schedule for Sean with all three children.

Sean filed a motion to enlarge the ruling.  In part, he sought to have the record reopened to include supplemental answers to interrogatories that were proffered to the court the day after trial.  The district court denied the request. Sean appealed and Jamie cross-appealed.

## II.    *Physical Care*

Sean contends the district court should have granted the parents joint physical care of the children.  The district court found this option inappropriate, "given the high degree of conflict and the poor level of communication between the parties."  On our de novo review, we agree with this assessment.

Both parents testified to post-separation discord and highly-charged visitation exchanges that included multiple calls to police.  At trial, Sean said his

relationship with Jamie had "[a]bsolutely not" calmed down and there were "still communication problems" between the two. Sean accused Jamie of failing to discuss major decisions involving the children, such as a move from DeWitt to Davenport, enrollment of the oldest child in a Catholic school, and the children's activities.

Jamie acknowledged the parents "don't speak" and agreed she did not discuss her move to Davenport because she "knew [Sean] would have issues with" the children "going to school in Davenport." She also conceded Sean "probably" would "not" have been happy with her decision to enroll the oldest child in a Catholic school because Sean was not Catholic. She stated the parents disagreed on religious training and methods of disciplining the children, among other things.

These frank admissions by both parents establish that joint physical care was not in the children's best interests. *See In re Marriage of Hansen*, 733 N.W.2d 683, 698-99 (Iowa 2007) (noting that in determining whether a joint physical care relationship is appropriate courts should consider the parents' ability "to communicate and show mutual respect" and "the degree to which the parents are in general agreement about their approach to daily matters"); *see also* Iowa Code § 600B.40 (2011) (applying the same factors to custody determinations of unmarried parents).

We turn to the district court's conclusion that Jamie rather than Sean should have physical care of the children. The court reasoned, in part, that Jamie was the children's "primary physical caregiver, first as a stay-at-home mom, and then during the more recent period when both parents were working

outside of the home." *Hansen*, 733 N.W.2d at 696 ("[S]tability and continuity of caregiving are important factors that must be considered in custody and care decisions."). The record supports this reasoning.

Sean acknowledged Jamie was a stay-at-home mom for four years, by agreement of the parties. He also conceded that, in the six months preceding the separation, she woke the children up and put them to bed and was the person primarily responsible for preparing and serving meals and taking the children to medical appointments. When questioned about those appointments, he stated he "possibly attended one."

In granting Jamie physical care, the district court also stated Jamie "has generally done a good job of keeping [Sean] informed as to the children's educational and healthcare developments and appointments." We find less support for this finding than the finding that Jamie was the primary caretaker. While Jamie notified Sean about medical appointments, she did not trust him enough to consult with him about educational questions, such as where the children would be schooled and what type of school they would attend. She made these decisions unilaterally, knowing they were contrary to Sean's wishes. That said, Sean was equally mistrustful of Jamie, going so far as to record visitation exchanges. This factor, therefore, does not favor either parent.

Despite Jamie's unwillingness to consult with Sean on major decisions affecting the children, she recognized the importance of Sean's relationship with them and ensured that the children saw him regularly, even in the absence of a visitation order. The only exception arose after Sean informally disavowed the oldest child, a decision that he later acknowledged was hurtful. To protect the

child from further emotional harm, Jamie disallowed visits for a period of time. Later, those visits were reinstated.

In the end, we conclude the district court acted equitably in granting Jamie rather than Sean physical care of the children. We base our decision on Jamie's role as primary caretaker, her general willingness to facilitate the children's contact with Sean, and the district court's finding that certain aspects of Sean's testimony were not credible. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007) (giving weight to district court's credibility finding).

### III.     *Exclusion of Supplemental Answers to Interrogatories*

At trial, Sean sought the admission of interrogatory answers he propounded to Jamie. The district court admitted the answers.

After trial, Sean's attorney advised the court that she "failed to notice that only the original answers from the first set had been included in [her trial] notebook and not also the Supplemental Answers that she had submitted." She asked to have the additional answers admitted but stated if opposing counsel "objects to their inclusion I understand."

Jamie's attorney did object to the admission of the additional answers, noting that she "would have absolutely questioned [her] client regarding her answers to the same had they been included at the time of trial."

On appeal, Sean asserts the supplemental answers should have been admitted because "[t]he record had not been closed at the time [he] sought to include" them, there would be no prejudice to Jamie because "they were her answers and she had not elected to update them," and "[t]he first 24 [a]nswers

came in without objection, and therefore last 7 were not subject to objection either."

These assertions lack support in the record. First, the district court closed the record at the conclusion of trial, stating, "I want to make sure that all the exhibits that have been admitted are accounted for." The only matter the court relegated to post-trial consideration was "information that may be needed on child support guidelines." Second, Jamie's attorney asserted that Jamie would be prejudiced by the post-trial admission of the supplemental answers because she would have no opportunity to be questioned about those matters. Finally, Jamie's attorney did in fact object to the admission of the first set of answers when they were offered at trial, pointing out that they were irrelevant. While the district court overruled the objection, the ruling does not mandate a conclusion that the supplemental answers were relevant. *See Herron v. Temple*, 200 N.W. 917, 919 (Iowa 1924) (noting answer to interrogatory was "immaterial and ineffective for any purpose").

We conclude the district court appropriately denied Sean's belated request to admit the supplemental answers to interrogatories.

## IV. *Attorney Fees*

Sean contends the district court abused its discretion in awarding Jamie $750 in trial attorney fees. Jamie counters that the attorney fee award should be "increase[d]."

The record reflects that Jamie incurred close to $10,000 in trial attorney fees and had an outstanding balance of more than $5000 exclusive of trial time. The district court ordered Sean to pay a fraction of these fees. *See* Iowa Code

§ 600B.26 (authorizing award of fees to prevailing party).  We discern no abuse of discretion in the court's ruling.  *See Markey v. Carney*, 705 N.W.2d 13, 25 (Iowa 2005) (stating decision to award fees rests in discretion of court).

Both parents seek appellate attorney fees.  Sean is not entitled to fees because he is not the prevailing party.  Jamie, as the prevailing party, was obligated to defend this action, and earns significantly less income than Sean.  Accordingly, we order Sean to pay $1500 toward her attorney fee obligation.

**AFFIRMED ON BOTH APPEALS.**