# IN THE COURT OF APPEALS OF IOWA

No. 14-1837
Filed October 14, 2015

**TODD T. BOHLEN,**
     Plaintiff-Appellant,

**vs.**

**JENNIFER T. HELLER,**
     Defendant-Appellee.
_____

Appeal from the Iowa District Court for Cerro Gordo County, James M. Drew, Judge.

Todd Bohlen appeals the district court's ruling on his petition to recover child support overpayments he made to Jennifer Heller after his parental rights were terminated. **AFFIRMED.**

Andrew J. Zbaracki of Newbrough Law Firm, L.L.P., Ames, for appellant.

William P. Baresel of Prichard Law Office, P.C., Charles City, for appellee.

Considered by Vaitheswaran, P.J., Doyle, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**VAITHESWARAN, Presiding Judge.**

Todd Bohlen and Jennifer Heller divorced in 1997. Bohlen was ordered to pay Heller child support of $312 per month. Bohlen left the state and lost contact with his child. He also fell behind in his child support payments.

Meanwhile, Heller remarried. She asked Bohlen whether he would be willing to terminate his parental rights to the child so the child could be adopted by her new husband. Bohlen agreed.

Bohlen signed a consent to adoption in 2005. Heller's attorney mailed him a file-stamped copy of the initial adoption documents.

Pursuant to an income withholding order, the Child Support Recovery Unit (CSRU) deducted funds from Bohlen's paychecks to cover the back-due support. Although the arrearage was satisfied in 2007, the income-withholding order remained in place. By late 2011, Bohlen had overpaid $26,107.87.

Bohlen had the withholdings stopped in late 2011. At the same time, he sued Heller to recover the overpayment. Following a bench trial, the district court concluded Heller was unjustly enriched, but only awarded Bohlen the $8000 remaining in a segregated child support account created by Heller and now controlled by their daughter. This appeal followed.

Bohlen claims "Heller was unjustly enriched in the receipt of a child support overpayment." The district court essentially agreed. *See West Branch State Bank v. Gates*, 477 N.W.2d 848, 851-52 (Iowa 1991) ("Unjust enrichment is an equitable principle mandating that one shall not be permitted to unjustly enrich oneself at the expense of another or to receive property or benefits without making compensation for them."). When Bohlen's parental rights were

terminated in 2005, all his obligations toward the minor child were also terminated, including his obligation to pay child support. *See* Iowa Code 600.13(4) (2011) ("A final adoption decree terminates any parental rights, except those of a spouse of the adoption petitioner . . . ); *In re Marriage of Bethards*, 526 N.W.2d 871, 874-75 (Iowa Ct. App. 1994) (holding child support obligation was terminated upon determination that father was not the child's legal parent). Accordingly, withholdings were appropriate only to satisfy the child support arrearage.

The real question is whether Heller's defense of laches barred Bohlen from recovering the entire amount of the overpayment from Heller. "Laches is an equitable doctrine premised on unreasonable delay in asserting a right, which causes disadvantage or prejudice to another." *Markey v. Carney*, 705 N.W.2d 13, 22 (Iowa 2005) (quoting *State ex rel. Holleman v. Stafford*, 584 N.W.2d 242, 245 (Iowa 1998)); *see also Life Investors Ins. Co. of Am. v. Estate of Corrado*, 838 N.W.2d 640, 644 (Iowa 2013) (same).

The district court concluded "Heller's laches defense [was] valid." The court reasoned as follows:

> Bohlen waited nearly six years after his parental rights were terminated before doing anything about the child support payments. His contention that he "assumed" the adoption did not go through is extremely difficult to believe. Even if that were the case, the fact that he made no follow-up after signing formal paperwork is incredible. An equally, if not more, plausible explanation is that Bohlen knew he had a substantial arrearage and was not paying proper attention as the delinquency was being reduced. In any event, it is undeniable that Bohlen was the one person who could and should have put a stop to the withholding long ago.
>
> Bohlen signed formal papers for the termination of his parental rights and was fully aware that child support was deducted

from his paychecks for years after the fact. By any measure his prolonged lack of action would be considered unreasonable.

The prejudice to Heller, the court said, was "obvious": "Much of the money has already been spent and it is unclear how much was spent by Heller as opposed to the child herself."

On our de novo review, we agree with this reasoning. Heller's attorney testified his standard practice would have been to mail a copy of the adoption decree to Bohlen and to the CSRU. While he could not furnish proof of doing so, there is no dispute Bohlen signed a consent to the adoption and received the initial adoption documents in 2005, yet did not follow up with the CSRU until 2011.

Significantly, Bohlen knew he had a child support arrearage, knew funds to satisfy the arrearage were being deducted from his paycheck separately from his current child support obligation, and was informed by the CSRU that his "arrears are paid." While Bohlen testified he could not remember when the CSRU sent the notice, he would have known the arrearage was satisfied in 2007 had he monitored the CSRU's withholdings. As noted, he did not seek termination of the withholdings and recoupment of the overpayment until late 2011. Unlike *Markey*, in which a parent established she could not afford to file an action to recover back-due support sooner than she did, Bohlen presented no evidence of financial constraints precluding earlier action. *See Markey*, 705 N.W.2d at 22-23.

Bohlen nonetheless contends Heller could not assert the laches defense because she benefitted from the delay. *See id.* ("[A] party cannot assert the

defense of laches if he or she actually benefited from the delay." (citing 27A Am. Jur. 2d *Equity* § 193, at 670)). This argument is appealing at first blush, but it ignores the fact Heller went without child support for a period of time. *See Regal Ins. Co. v. Summit Guar. Corp.*, 324 N.W.2d 697, 704 (Iowa 1982) (stating the laches "doctrine is applied to do, and not to defeat, justice"). In contrast, the parent making the same argument in *Markey* was the payor rather than the payee and asserted he could not pay because he dissipated the funds before the payee filed her recoupment action. In short, justice was done in *Markey* by allowing the payee's recoupment action to go forward. Here, justice was done by not requiring Heller to repay funds already spent on the child.

We recognize the seeming anomaly of finding unjust enrichment but not requiring disgorgement of the entire amount by which the party was unjustly enriched. But as the Iowa Supreme Court stated decades ago, sometimes "it will be impossible to place the parties in status quo." *Chadek v. Alberhasky*, 111 N.W.2d 297, 301-02 (Iowa 1961). Bohlen's lack of diligence in monitoring the repayment of his arrearage made it difficult if not impossible to return the parties to the status quo.

Bohlen raises a final point. He asserts the fact he filed his action within the prescribed statute-of-limitations period renders the laches doctrine invalid. "Laches differs from the statute of limitations in that the former appeals to the discretion of the court and is not predicated upon definitely fixed periods of time." *Myers v. Wendel*, 200 N.W. 431, 434 (Iowa 1924). We conclude the district court acted equitably in invoking the laches doctrine notwithstanding the fact the statute of limitations period for recouping the overpayment had yet to expire.

We affirm the district court's reliance on the doctrine of laches to deny Bohlen recovery of all but $8000 of the child support overpayment.

**AFFIRMED.**