# IN THE COURT OF APPEALS OF IOWA

No. 15-1442
Filed April 27, 2016


**LINDSEY ANN DRAEGER,**
        Petitioner-Appellant,

**vs.**

**RYAN MATTHEW BARRICK,**
        Respondent-Appellee.
_____


        Appeal from the Iowa District Court for Hardin County, James C. Ellefson,

Judge.


        Lindsey Draeger appeals the district court's custody decree.  **AFFIRMED**

**AS MODIFIED AND REMANDED.**



        Barry S. Kaplan of Kaplan & Frese, L.L.P., Marshalltown, for appellant.

        Tara L. Hofbauer and Andrew B. Howie of Hudson, Mallaney, Shindler &

Anderson, P.C., West Des Moines, for appellee.



        Heard by Vogel, P.J., Doyle, J., and Eisenhauer, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**EISENHAUER, Senior Judge.**

Lindsey Draeger appeals the district court's decree granting physical care of the child, R.L.B., to Ryan Barrick. Lindsey requests the decree be modified to establish joint physical care, or in the alternative, she requests R.L.B. be placed in her physical care. Ryan requests appellate attorney fees. We find joint physical care is in the best interests of the child and modify the decree's physical-care provision. We remand for the limited purpose of calculating child support based on the modified physical-care arrangement. We decline Ryan's request for appellate attorney fees.

## I. BACKGROUND FACTS AND PROCEEDINGS

Ryan and Lindsey began living together in July 2012, and R.L.B. was born in early 2014. The parties were never married and eventually separated in July 2014.

Lindsey currently resides at Fort Riley, Kansas, with her husband, Kyle Draeger. Lindsey's education consists of a high school diploma and some college, but no degree. She is the mother of four children and has physical care of the two oldest children, who are nine and eight years old. Lindsey is originally from Iowa, and her extended family resides near Ryan. Lindsey and Kyle were married in September 2014. Kyle is the father of six children. Three of Kyle's children reside with the couple in Kansas. Kyle's other children reside in Iowa. Overall, Lindsey and Kyle provide care for six children, including R.L.B. and Lindsey and Kyle's newborn child. Lindsey has not worked outside the home since her marriage to Kyle, and she provides daily care to the children. Lindsey

testified the children get along well with each other, there are no discipline issues, and they receive good marks for grades and attendance in school. Kyle serves in the United States Army and works at Fort Riley. He was injured while working in the spring of 2015 and expects to be "medically retired" by December 2015. He intends to attend Iowa State University in Ames (where he has been admitted) or Drake University in Des Moines and plans on relocating the family to the Ames/Des Moines area.

Ryan currently resides in Alden, Iowa, at a residence he has owned since R.L.B.'s birth. Ryan is not married and does not have any other children. He served in the United States Navy for four years and was honorably discharged in 2005. His educational background consists of a high school diploma and an associate's degree. Ryan works for a general contractor who is flexible in allowing time off to accommodate Ryan's care of R.L.B. Ryan has received positive reviews for his work. While at work, Ryan places R.L.B. in a daycare near his work—Lindsey has no issues with the daycare provider. In 2011, Ryan was convicted of two charges of operating while intoxicated, and his driver's license was suspended for a period. Since, Ryan has not committed other alcohol-related offenses, and he testified he does not drink alcohol when R.L.B. is in his care. In June 2013, and while he was residing with Lindsey, Ryan was charged with assault for striking an individual in the head after the individual called Lindsey "some bad names." Ryan has been diagnosed with depression, which he regulates with medication. Ryan lives near his extended family, who he described as "very supportive" of him and R.L.B.

In August 2014, Lindsey filed a petition for dissolution of marriage from Ryan, claiming the two had a common law marriage. This matter was subsequently converted to a custody action when the parties jointly agreed there was no common law marriage. In December, the parties entered into a stipulation concerning temporary physical care providing for joint legal custody of R.L.B. and joint physical care. Ryan and Lindsey alternated physical care of R.L.B. on a bi-weekly basis. The stipulation set Cameron, Missouri as the meeting point for the bi-weekly exchange. This location was a fair meeting point between Lindsey's residence at Fort Riley, Kansas, and Ryan's residence in Alden, Iowa. Based on the testimony at trial, the exchanges were done in a civil manner, and there were minimal issues with the physical-care arrangement.

A custody trial was held on July 15, 2015. Both Ryan and Lindsey testified, as well as Ryan's girlfriend Laura Scott and Lindsey's husband Kyle. In the custody decree, the district court described the parties in the following fashion:

> The petitioner, Lindsey Crawford/Draeger, was born in 1987 and was 28 years old at the time of trial. . . . During her time in the courtroom, she was pleasant, polite and respectful, and appeared to be attempting to give direct and truthful testimony even when the subject matter was difficult. In those instances where the Court has not accepted her version of any particular events, the Court has generally done so out of concern for accuracy of her recollection and communication and not out of any doubts about her intention to be honest.
> . . . .
> The respondent, Ryan Matthew Barrick, is also 28 years old, one month older than the petitioner, and has never been married. R.L.B. is his only child. . . . As was true of Ms. Draeger, during his time in the courtroom, he was pleasant, polite and respectful, and appeared to be attempting to give direct and truthful testimony even when the subject matter was difficult. In those instances where the

Court has not accepted his version of any particular events, the Court has done so out of concern for accuracy of his recollection and communication and not out of any doubts about his intention to be honest.

The court issued the custody decree on August 24, granting the parties joint legal custody of R.L.B., with Ryan receiving physical care. Lindsey appeals from this decree.

## II.    STANDARD OF REVIEW

Our review of child custody proceedings is de novo. *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). "We give weight to the findings of the district court; especially to the extent credibility determinations are involved." *Id.* Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983).

## III.    MERITS

Lindsey claims the custody decree should be modified to grant her physical care of R.L.B., or in the alternative, shared physical care. We analyze both claims together.

Our analysis of who should have physical care is the same whether the parents are married or unmarried. *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988). "Physical care issues are not to be resolved based upon perceived fairness to the spouses, but primarily upon what is best for the child." *Hansen*, 733 N.W.2d at 695. In determining physical care, our overriding consideration is the child's best interest. *Id.* at 696. The Iowa Supreme Court has articulated several pertinent factors, including whether "both parents have historically

contributed to physical care in roughly the same proportion," the "ability of spouses to communicate and show mutual respect," and "the degree of conflict between parents." *Id.* at 697–98; *see also* Iowa Code § 598.41(3) (2013). Additionally, we consider "the degree to which the parents are in general agreement about their approach to daily matters." *Hansen*, 733 N.W.2d at 699. For joint physical care to work, "the parents must generally be operating from the same page on a wide variety of routine matters." *Id.*

As the district court recognized, Ryan and Lindsey are both competent and loving parents who are sincere in their desire to care for R.L.B. Thus the choice of physical care necessarily turns on narrow and limited grounds. In such cases "stability and continuity of caregiving are important factors" and "preservation of the greatest amount of stability possible is a desirable goal." *Id.* at 696–97. These factors favor a parent who was primarily responsible for the physical care of the minor child. *Id.* In granting Ryan physical care, the district court reasoned:

> This Court has given long and careful consideration to [Lindsey]'s request for primary physical care and to her alternative request for shared physical care, but finds that either such arrangement would not serve R.L.B.'s best interest. In reaching that conclusion, the Court has considered all of the factors described in *In re Marriage of Hansen*, . . . and Iowa Code § 598.41(3). Most of the considerations in section 598.41(3) point to joint legal custody. Each parent would be a suitable custodian. The psychological and emotional needs and development of the child would be better served by active contact with and attention from both parents. The parents can communicate with each other regarding the child's needs. Both parents have actively cared for the child both before and since the separation. Each parent can support the other parent's relationship with the child. In the case of [Ryan], this is reinforced by the fact that he has supported the

relationship between the child and [Lindsey]. The child is much too young to have any wishes that should be taken into consideration.

Both parties favor joint legal custody. The contested issue relates only to physical care. [Lindsey] would prefer primary physical care but proposes shared physical care as an alternative. [Ryan] opposes shared physical care due to a legitimate concern about when and where [Lindsey] and her husband will establish their household in Iowa after Mr. Draeger's discharge. As the Court has already said, it is likely that Mr. Draeger will pursue at least his undergraduate education at Iowa State or Drake and that he and [Lindsey] will make their home in the Ankeny vicinity. Shared physical care might work now, even more easily than it has worked under the temporary stipulation involving interstate exchanges, but when the child goes to school, it will not. It would be far too speculative to conclude that the Draegers and Mr. Barrick will live in the same school district or so closely that the child could attend school in a single place close to both parents.

. . . .

This court is called upon to decide this case now, and on the facts that exist so far. The respondent, Ryan Matthew Barrick, is the far more stable parent and is more likely to provide this child with a stable environment over the course of her childhood. The parties should have joint legal custody of their child, with primary physical care assigned to the respondent, Ryan Matthew Barrick.

Upon our de novo review, we agree with much of the district court's analysis on Ryan and Lindsey's suitability as caregivers to R.L.B.; however, we disagree with the court's decision to grant Ryan physical care. R.L.B.'s best interests are served by granting Ryan and Lindsey joint physical care. According to the record and the district court's own conclusions, Lindsey and Ryan have satisfied most of the *Hansen* and Iowa Code section 598.41 factors. Ryan and Lindsey "have historically contributed to physical care [of R.L.B.] in roughly the same proportion," they show "mutual respect," they agree on each other's approach to parenting, there is minimal conflict, and they agree on routine matters. *Hansen*, 733 N.W.2d at 697–99; *see also* Iowa Code § 598.41(3).

The district court's decision rests on its conclusion that Lindsey's past relationships and her current living situation demonstrate instability; in contrast, Ryan has had fewer relationships and has remained at the same Iowa residence. While the stability of a parent and geological proximity are relevant considerations, they are not the most important considerations. By eliminating the joint physical-care arrangement that, (according to both Ryan and Lindsey's testimony) had been going well, "stability and continuity of caregiving" for R.L.B. has been disrupted. *See Hansen*, 733 N.W.2d at 697–98. Additionally, the district court pointedly (and rightly) refused to make predictions about the two families' futures, but its desire to "avoid the need for change in the future" has resulted in an outcome that has given less weight to the majority of the physical-care factors. While geographic proximity and the stability of Lindsey's relationship are important considerations, they are outweighed by all of the other factors pointing to a joint physical-care arrangement.

Given Ryan and Lindsey's proven suitability as caregivers to R.L.B. we decline Lindsey's request for physical care, and we modify the physical care provision of the custody decree to provide for joint physical care.

## IV.  ATTORNEY FEES

Ryan requests appellate attorney fees. An award of appellate attorney fees is not a matter of right but rests within our discretion. Iowa Code § 600B.1; *Markey v. Carney*, 705 N.W.2d 13, 25 (Iowa 2005). Given the circumstances in this action, we decline to award Ryan appellate attorney fees.

## V. CONCLUSION

We find R.L.B.'s best interests are served by granting her parents joint physical care; therefore, we modify the physical care provision of the custody decree to provide for joint physical care. We remand for the limited purpose of determining child support based on the new custody arrangement. We decline Ryan's request for appellate attorney fees. Costs of appeal are split equally between the parties.

**AFFIRMED AS MODIFIED AND REMANDED.**

Doyle, J., concurs; Vogel, P.J., dissents.

**Vogel, Presiding Judge.** (dissenting)

I respectfully dissent because I would defer to the district court's well-reasoned opinion. The district court heard the testimony of the parties and carefully and thoughtfully reviewed the law. The case must be decided on the facts that exist at the time of the hearing. At that time, Lindsey lived in Kansas and Ryan lived in Iowa, and the child was almost eighteen months old. While joint physical care may work at the present moment due to the child's age, it will not be long before the child will start attending preschool and elementary school. At that point, it will be essential for the child to primarily reside in one school district. While Lindsey alluded to possible plans to move to Iowa and live in the Ankeny area, where her husband would attend school, even a move to Ankeny would not be adequate for a joint physical care arrangement for R.L.B. Ryan lives and works in Alden, an hour away from Ankeny. Ordering joint physical care despite the geographical distance only necessitates a subsequent modification action that will need to be filed as soon as R.L.B. begins attending school. *See, e.g.*, *In re Marriage of Memmers*, No. 03-0467, 2003 WL 21919794, at *2 (Iowa Ct. App. Aug. 13, 2003) (noting the parties' distance of seventy-five miles and in different school district makes a joint physical care arrangement unworkable once the child starts attending school); *see also* Iowa Code § 598.21D (providing a relocation of 150 miles or more by a parent with physical care may be considered by the court to be a substantial change in circumstances to justify modifying the physical care arrangement).

While the majority states the parties, "have satisfied most of the *Hansen* and Iowa Code section 598.41 factors," we note the court in *Hansen* clearly stated no "iron clad formula" should be applied as "courts must consider the total setting presented by each unique case" in making a determination as to the best interests of the child. *See In re Marriage of Hansen*, 733 N.W.2d at 683, 699–700 (Iowa 2007) (noting there are no exclusive factors or factors that will always be determinative). Here, the district court found it "far too speculative to conclude that the Draegers and Mr. Barrick will live in the same school district or so closely that the child could attend school in a single place close to both parents." I agree with that assessment. The distance between the parties at the time of trial made long-term joint physical care unworkable. The district court then determined Ryan was the far more stable parent; he was "more likely to provide this child with a stable environment over the course of her childhood." Therefore, I would affirm the district court's physical care determination.