# IN THE COURT OF APPEALS OF IOWA

No. 16-0421
Filed January 11, 2017

**MOLLY KAYE HURLBERT,**
    Plaintiff-Appellee,

**vs.**

**SCOTT EUGENE HARRIS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Union County, Richard B. Clogg, Judge.

A father appeals the court's denial of joint physical care. **AFFIRMED.**

Scott D. Fisher of Fisher Law Firm, P.L.C., West Des Moines, for appellant.

Andrew J. Zimmerman of Nielsen & Zimmerman, P.L.C., Corning, for appellee.

Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

Scott Harris and Molly Hurlbert are the parents of now seven-year-old O.H. In an action under Iowa Code chapter 600B (2015), the district court granted the parents joint legal custody of their daughter and placed physical care with Molly. On appeal, Scott asks for joint physical care. While the cordial and constructive relationship between Scott and Molly does suggest the feasibility of joint physical care, we ultimately agree with the district court's assessment that the parents' historic pattern of caregiving tips the scale slightly toward Molly as the physical-care provider.

O.H. was born in 2009. Scott and Molly moved in together in 2010 and raised their daughter under the same roof until November 2014, when they amicably separated. Scott and Molly both remained in Creston, residing less than two miles apart. Scott lived with his girlfriend Kristina and her three children. Scott also had visitation with his three biological children from an earlier marriage. Molly lived alone with O.H.

Early in the separation, Scott did not exercise regular visitation, but Molly and Scott soon formalized a parenting schedule, without court intervention, in December 2014. The schedule included visitation for Scott on alternating weekends, every Wednesday overnight, and a few additional hours the Monday evening following Molly's weekend parenting time.[1]

---

[1] Scott's time with O.H. coincided with his visitation with his other children, which Molly believed was important: "She deserves to be around her siblings." Molly also confirmed that when Kristina's children were factored in, Scott would have seven children in his household when O.H. had her overnights with him. Molly testified she believed they had enough room to accommodate everyone.

In January 2015, Molly filed a petition to establish paternity, custody, visitation, and support. In his answer, Scott admitted paternity and requested joint physical care (often referred to as shared physical care). Molly asked for physical care of O.H. to be placed with her. In December 2015, the district court heard testimony and issued a decree awarding physical care to Molly. Following Scott's motion for amended findings and conclusions under Iowa Rule of Civil Procedure 1.904(2), the court issued an amended decree confirming it was not in O.H.'s best interest "that Molly and Scott have shared physical care." The court explained its physical-care ruling as follows:

> [O.H.] has lived with Molly since the parties' breakup until the time of trial. [O.H.] is a happy child and does well in school. Molly and Scott have a history of good communication and acting in the best interests of their child. The parties have no fundamental disagreements regarding child rearing, disciplinary matters, and schooling. Molly having primary care and Scott having liberal visitation has gone well in the past. Molly is the one providing the primary care for the child and is the person best suited to meeting her needs. Due to the young age of the child it is in her best interests not to disrupt the status quo. Molly has and can be expected to promote and encourage the relationship between Scott and the child.

Scott appeals the district court's denial of joint physical care. We review the custody decision de novo. *See* Iowa R. App. P. 6.907; *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988) (explaining we employ the same legal analysis in resolving questions concerning custody of a child born to unmarried parents as we do in the case of divorcing parents). Despite our de novo review, "we give considerable weight to the sound judgment of the trial court who has had the benefit of hearing and observing the parties firsthand." *In re Marriage of Kleist*, 538 N.W.2d 273, 278 (Iowa 1995).

This case presents a refreshing scenario where both parents are respectful of one another and encourage their daughter to have a positive relationship with the other parent.[2] O.H. is lucky to have two loving parents who hold her best interests in such high regard. But the civility between Molly and Scott makes the decision regarding joint physical care a close call.

Scott argues joint physical care would be in O.H.'s best interests under the factors identified in *In re Marriage of Hansen*, 733 N.W.2d 683, 696–99 (Iowa 2007). To assess the viability of shared care, the *Hansen* court zeroed in on four factors: (1) the stability and continuity of care-giving, (2) the ability of the parents to communicate and show mutual respect, (3) the degree of conflict between the parents, and (4) the degree to which the parents generally agree about their approach to daily child-rearing matters. 733 N.W.2d at 696–99. As already discussed, factors two, three, and four point to the viability of joint physical care. But the remaining factor—stability and continuity of care-giving—was the guiding light for the district court's decision. The court emphasized the success of the parties' voluntary parenting schedule, in place for the year leading up to the trial, under which O.H. lived with Molly and had liberal visitation with Scott. Noting O.H. was happy and doing well in school, the district court declined to disrupt "the status quo."

After reviewing the record anew, we reach the same conclusion as the district court. Molly testified she believed it served O.H.'s best interests to remain on the established schedule, telling the court: "I think it's really important to keep

---

[2] Scott even offered an exhibit showing polite text messages between him and Molly to illustrate their ability to effectively communicate.

things the same for [O.H.]" because "she's young. It just gives her a steady environment." While not critical of the busy household maintained by Scott, Molly testified: "I feel like with me it's one on one more. I'm able to meet her needs."

Molly testified Scott did not normally seek more time in deviation from their set schedule, but she had occasionally asked him to take O.H. for an additional overnight when Molly needed to study for a test, and he generally agreed. Molly also told the court she would be flexible if Scott ever wanted more time with O.H. Scott testified O.H. was doing well on her current schedule.

In *Hansen*, the court reiterated: "[S]tability and continuity of caregiving are important factors that must be considered in custody and care decisions." *Id.* at 696 (quoting a scholar for proposition that "past caretaking patterns likely are a fairly reliable proxy of the intangible qualities such as parental abilities and emotional bonds that are so difficult for courts to ascertain"). On the issue of emotional bonds, O.H.'s maternal grandmother testified O.H. confided in her several times that "she loves her dad very much and she wants to see him but that she would rather live with her mother."

The record supports continuing the routine for O.H. as established voluntarily by the parents. *Hansen* advised: "[W]here one spouse has been the primary caregiver, the likelihood that joint physical care may be disruptive on the emotional development of the children increases." *Id.* at 698; *see also In re Marriage of Winter*, 223 N.W.2d 165, 166 (Iowa 1974) (listing as a factor "the effect on the child of continuing or disrupting an existing custodial status"). Molly was the primary caregiver in the year before the trial. Like the district court, we

find switching to shared care at this juncture would not be in O.H.'s best interests.

In her brief, Molly asks for appellate attorney fees in the amount of $2040. Under Iowa Code section 600B.26, we may award the prevailing party reasonable attorney fees. An award of appellate attorney fees rests within our discretion. *See Markey v. Carney*, 705 N.W.2d 13, 26 (Iowa 2005). In determining whether to award fees, we consider "the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal." *See id.* (citation omitted). Having considered these factors, we determine Scott shall pay $1000 of Molly's appellate attorney fees. Costs shall be assessed equally between the parties.

**AFFIRMED.**