# IN THE COURT OF APPEALS OF IOWA

No. 14-1741
Filed June 24, 2015

**GARRETT JOSEPH CLAERHOUT,**
        Plaintiff-Appellee,

**vs.**

**KRISTI LYNN ANDERSON,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Gregory Hulse,

Judge.

Kristi Anderson appeals from a district court award of physical care to the

child's father. **AFFIRMED AS MODIFIED.**

Lynn C.H. Poschner of Borseth Law Office, Altoona, for appellant.

Tara M. Elcock of Elcock Law Firm, P.L.C., Indianola, for appellee.

Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**VAITHESWARAN, J.**

Kristi Anderson appeals a district court order placing physical care of her child with the child's biological father, Garrett Claerhout. She also challenges several other aspects of the decree.

## I. Background Facts and Proceedings

Anderson and Claerhout had an affair which resulted in the birth of a child. During the pregnancy, Anderson essentially lived two lives, one with her husband and the other with Claerhout. While both men suspected something was awry, they chose to believe Anderson when she told one she was just friends with the other and told the other she was not married.

In the eighth month of Anderson's pregnancy, Claerhout confronted her about her marital status. Anderson told him she had been married but obtained an annulment. At the same time, she told Claerhout she had miscarried. Both statements were false.

A devastated Claerhout sought and obtained eight days of bereavement leave from his employer. His family cancelled a scheduled baby shower.

A month later—just three days before the baby's birth—Anderson called Claerhout and told him the baby never died. She declined to disclose her plans for the birth. When Claerhout asked to be at the delivery, she refused, stating he would make the situation worse.

Claerhout learned of the baby's birth from one of his friends. Claerhout called Anderson and asked to see the infant. Again, Anderson refused.

Claerhout scheduled a paternity test. On the day of the test—five days after the child's birth—he held his child for the first time. As the parents

completed paperwork in connection with the test, Claerhout discovered the person he believed to be Kristi Wellman was officially registered as Kristi Anderson, and her registered address was Keokuk rather than the Des Moines area, as he had been led to believe. He also discovered Anderson had given the child her husband's last name. When Claerhout asked Anderson about these discrepancies, she again told him she had been married but the marriage was annulled.

Meanwhile, the paternity test confirmed Claerhout as the biological father of the child. In completing additional paperwork for a pediatrician, Claerhout surmised Anderson was indeed married and living with her husband in Keokuk.

Claerhout petitioned to establish paternity, custody, child support, and visitation. Six weeks after the child's birth, the district court entered a temporary order granting the parents temporary joint legal custody and week-to-week joint physical care. The court also appointed a custody evaluator.

In time, the parents deviated from the temporary order. Because Anderson was unemployed, Claerhout allowed her to care for the child at her mother's home in the Des Moines area on three days of his "physical care" week.

Following trial, the district court entered a decree stating the parents would continue to share care on a week-to-week basis until August 1, 2016, at which time Claerhout would receive physical care and Anderson would exercise visitation on the first three weekends of the month. The court also granted Claerhout the dependent tax exemption and ordered Anderson to pay Claerhout $1500 towards his trial attorney's fees.

Anderson filed a motion for expanded findings and conclusions pursuant to Iowa Rule of Civil Procedure 1.904(2). The district court amended the decree to provide that exchanges would take place either at Claerhout's home if Anderson was unemployed or in Batavia or Ottumwa—midway between the parents' homes—if Anderson was employed. Anderson appealed.

## II. Analysis

### A.    Physical Care

"Physical care" is defined as the "right and responsibility to maintain a home for the minor child and provide for the routine care of the child." Iowa Code § 598.1(7). The overriding consideration in determining which parent shall have physical care of a child is the best interests of the child. *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988); *see also* Iowa Code § 600B.40.

Anderson contends the child's best interests were not served by the district court order granting Claerhout physical care. She suggests she was the primary caretaker and points to the three "nearly eleven hour[ ]" days of care she provided during Claerhout's physical care weeks, in addition to her weeks of care.

Anderson's offer to assist with care does not transform her into the primary caregiver. While she may have spent more waking hours with the child through Claerhout's good will in letting her serve as daycare provider, both parents shared physical care of their child for more than a year. In other words, both fed, bathed, and attended to the child's daily needs on a sustained basis,

both nurtured the child, and both could take credit for the child's achievement of "developmental milestones."[1]

The factor tipping the scales in favor of Claerhout as physical caretaker was Anderson's dissembling. As the custody evaluator reported,

> My biggest concern in this evaluation is the mother's history of lying about herself and people in her life in order to avoid dealing with difficult situations or for other reasons that promote her self-interest. In my opinion, her decision to say that [the child] was dead was the ultimate expression of interference in and lack of respect for the father-daughter relationship. It suggests that she has not been able to differentiate her personal wants or needs from the child's best interest, and it shows a fundamental disrespect for [the child] prior to her birth. The mother's apparent lack of awareness of the inappropriateness of this behavior leads me to doubt her ability to facilitate father-daughter contact if she were granted primary physical care of the child and if it were not convenient or comfortable for her to do so. For that reason, I recommend that [the child] be placed in the primary physical care of her father and spend weekends (Friday and Saturday overnights) in the care of her mother.

At trial, the evaluator testified, "I am concerned about . . . [Anderson's] ability to model for [the child] how you cope when things are not going exactly the way you want them to without lying to people about them."

Anderson's trial testimony did not dispel this concern. While she admitted to acting rashly in feigning a miscarriage, she justified her action on the basis of Claerhout's emotional and angry confrontation about her marital status. When asked why she waited three to four weeks to correct her assertion, she responded, "if you want to make the best life that you can for everybody and for your unborn child, you need to start with the truth, which is why I said she is still alive."

---

[1] Citing the parents' care, the custody evaluator noted the child was "a fortunate little girl in many respects."

Notwithstanding Anderson's new-found commitment to being "100 percent honest with everybody," she failed to retract her statements about the annulment of her marriage. When asked about her difficulties with honesty, she stated she "didn't want to hurt [Claerhout's] feelings" and she "likes to make people feel good about themselves." Anderson's failure to fully apprehend the trauma she caused made her less equipped than Claerhout to serve as primary caretaker of the child. As Claerhout's mother testified,

> "[Anderson] just doesn't get it. I don't think she has any clue how much she hurt [Claerhout]. I don't know if she has a clue how much she has hurt all of us. . . . And so I am really worried about [ ] just raising [the child] to know the difference between right and wrong and to know that you have to treat people right. Just all the things you're supposed to teach a child, because they do not know any of that stuff. You have to teach them to be compassionate for people. And I just don't know she can do it.

On our de novo review, we concur in the district court's decision to assign heavy weight to Anderson's history of untruthfulness.

We also are troubled by Anderson's views about Claerhout's parenting abilities. She testified, "I think that I am best for [the child] because I promote her well-being. I promote her development, every stage of development, so creatively, physically, verbally, emotionally, *whereas I do not think that she would get that anywhere else.*" (Emphasis added). She added, "I have an expectation of how I see [the child] to grow up, and I see that being fulfilled when I am primarily taking care of her. *If [Claerhout] were primarily taking care of her, I do not think those expectations would be met.*" (Emphasis added). These views raise doubts about her willingness to support Claerhout's relationship with the child.

We recognize Anderson communicated effectively with Claerhout while the paternity action was pending. For example, she regularly texted him pictures of the child, copied medical records for him, and held video chats when the child was in her care. Anderson also facilitated some visitation with Claerhout before the temporary custody order was entered and, after it was entered, exchanged the child without incident. But her statements quoted above suggest she might not be as conciliatory in the long-term.

Claerhout, in contrast, while expressing understandable distrust of Anderson, refused to disparage her and exhorted his family to do the same. When asked why he should serve as primary caregiver, he acknowledged Anderson was a good mother but echoed his own mother's testimony concerning the importance of teaching the child right from wrong.

We agree with the district court that the child's best interests were served by granting Claerhout physical care of the child as of August 1, 2016.[2]

### B.    Dependent Exemption

Anderson contends the district court should not have granted Claerhout the dependent tax exemption. We disagree. Iowa Court Rule 9.6(5) states, "[t]he custodial parent shall be assigned one additional dependent exemption for each mutual child of the parents, unless a parent provides information that the noncustodial parent has been allocated the dependent exemption for such child." Claerhout became the custodial parent and, as of the date of trial, was the only employed parent who would benefit from the dependent tax exemption.

---

[2] We acknowledge the unusual circumstance of delaying the award of physical care until August 1. 2016. However, the parties agreed to share care until the child reached the age of preschool, and neither party raised the delay as an issue on appeal.

Accordingly, we conclude the district court acted equitably in granting him the exemption.

### C.     Transportation

Anderson next takes issue with the district court's decision to assign all the transportation responsibilities to her unless she becomes employed. We agree this provision is inequitable.

Anderson's unemployment is a factor weighing for rather than against transportation assistance. While she may not have had employment-related time constraints at the time of trial, she had home-related time constraints, which made the three-hour commute as difficult for her as for Claerhout. Additionally, she bore the entire cost of transportation despite the absence of an income stream. Under these circumstances, we modify the transportation provision to require—absent agreement of the parties—the exchanges of the child in Batavia or Ottumwa whether or not Anderson is unemployed. *See In re Marriage of Bonnette*, 492 N.W.2d 717, 722-23 (Iowa Ct. App. 1992); *see In re Marriage of O'Reagan*, No. 08-0591, 2009 WL 606136, at *3 (Iowa Ct. App. Mar. 11, 2009) (requiring transportation costs to be shared).

### III. Attorney Fees

Anderson appeals the district court order requiring her to pay $1500 towards Claerhout's trial attorney fees. An award is authorized to a prevailing party. *See* Iowa Code § 600B.26 ("In a proceeding to determine custody or visitation, or to modify a paternity, custody, or visitation order under this chapter, the court may award the prevailing party reasonable attorney fees."). An award

lies within the district court's discretion. *See Markey v. Carney*, 705 N.W.2d 13, 25-26 (Iowa 2005).

Claerhout prevailed after a lengthy hearing. We discern no abuse of discretion in the district court's minimal attorney award.

Both parents seek appellate attorney fees. Again, an award is discretionary. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). Given Anderson's unemployment, we decline Claerhout's request to have her contribute to his appellate attorney fee obligation. Although Anderson partially prevailed on appeal, we decline her request to have Claerhout contribute to her attorney fee obligation because the issue on which she prevailed was not the primary issue.

We affirm the district decree as modified.

**AFFIRMED AS MODIFIED.**