# IN THE COURT OF APPEALS OF IOWA

No. 15-0388
Filed January 27, 2016

IN RE THE MARRIAGE OF ELIZABETH E. FAIDLEY
AND DANIEL J. FAIDLEY

Upon the Petition of
ELIZABETH E. FAIDLEY, n/k/a ELIZABETH JANE ELWOOD,
      Petitioner-Appellee,

And Concerning
DANIEL J. FAIDLEY,
      Respondent-Appellant.

_____

      Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.

      Daniel Faidley appeals from the child and spousal support provisions of the decree dissolving his marriage to Elizabeth Faidley. **AFFIRMED.**

      Andrew B. Howie of Hudson, Mallaney, Shindler & Anderson, P.C., West Des Moines, for appellant.

      Anjela A. Shutts of Whitfield & Eddy, P.L.C., Des Moines, and Joseph T. Moreland of Hayek, Brown, Moreland & Smith, L.L.P., Iowa City, for appellee.

      Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**POTTERFIELD, Presiding Judge.**

Daniel Faidley appeals from the child and spousal support provisions of the decree dissolving his marriage to Elizabeth Faidley (now Elizabeth Elwood). Daniel and Elizabeth had been married for fourteen years when the district court entered a decree dissolving their marriage. In its decree, the court divided the parties' marital property, ordered joint legal custody of their three children, and placed the children in Elizabeth's physical care. The court ordered Daniel to pay $2700 monthly child support, and $3250 monthly spousal support for a period of forty-eight months. Daniel was also ordered to pay $15,000 for Elizabeth's trial attorney fees. Daniel now appeals, contending the trial court miscalculated his earnings. He also argues the award of attorney fees was an abuse of the trial court's discretion.

Under the circumstances presented, we find no failure to do equity in the trial court averaging Daniel's bonus income over a period of five years for purposes of child support. We also affirm the rehabilitative spousal support ordered, as well as the court's decision that the spousal support obligation will not be deducted from the net income figure used to calculate child support. We find no abuse of discretion in the amount of trial attorney fees awarded to Elizabeth. In light of the assets awarded and the parties' respective abilities to pay, we order Daniel to pay $3000 in Elizabeth's appellate attorneys' fees.

**I. Background Facts and Proceedings.**

Daniel and Elizabeth were married in November 2000. They had three children during their marriage (born in 2002, 2005, and 2010). Elizabeth filed a petition for dissolution of marriage on November 22, 2013. On March 27, 2014,

Daniel was ordered to pay temporary child support of $2523 and spousal support of $3400 per month. On July 22, the district court reduced temporary spousal support to $3250 but ordered Daniel to pay the children's monthly school tuition.

At the time of the December 2014 trial, Daniel and Elizabeth were both forty years old and in good physical and emotional health. Both are well educated, with college degrees each earned prior to their marriage.

Elizabeth was employed outside of the home when the parties first married. She testified that at the time of the parties' marriage she was earning $50,000 per year, which was more than Daniel was earning at that time. Soon after Daniel and Elizabeth married, they moved from Iowa to further Daniel's employment with Eli-Lilly. Elizabeth left the full-time work force when the parties' second child was born in 2005. She left the work force completely prior to the birth of the parties' third and youngest child in 2010. She was a full-time caregiver to the parties' children between the birth of this child and her reentry into the work force in January 2014. Elizabeth continues to earn approximately the same amount she did at the time of the parties' marriage fourteen years ago. Her annual salary at the time of trial was $55,660.

While Elizabeth cared for the children full time, Daniel continued to work for Eli-Lilly and progress in his career. There was a period of time when Daniel traveled extensively for work, leaving Elizabeth to be the children's sole caretaker. Daniel's income has increased about four-fold since the parties married. While working for Eli-Lilly, Daniel consistently received a base salary and an annual bonus. In his last year with Eli-Lilly, Daniel received compensation in excess of $300,000.

Daniel accepted a position with United Suppliers in February 2013. Daniel and Elizabeth moved back to Iowa for the newly-created position, which provided Daniel with a base salary of $150,000. He signed a contract that guaranteed an annual bonus of at least $35,000 to $80,000. He was guaranteed a $50,000 bonus for the first year (though he received $60,000). He also received a one-time signing bonus of $85,000. In his first year at United Suppliers, he received a promotion and two salary increases. At the time of trial, his base salary was $157,590. Steven Nielsen, general counsel and corporate secretary for United Suppliers, testified Daniel's current position was product manager, "a position that was created since Daniel started with us." He stated any bonus Daniel would receive depended upon personal performance and company performance. Nielsen also testified any bonus was governed by the contract Daniel signed—a minimum of $35,000 and a maximum of $80,000.

The district court found Daniel's annual income included his current yearly base salary of $157,590, a five-year-averaged bonus of $108,709.60,[1] and a yearly car allowance of $1300, for a total of $267,549.60. The court found Elizabeth's annual salary is $55,660. Using these figures, the court calculated Daniel's child support obligation and ordered Daniel to pay $2700 per month for three children. The court also ordered Daniel to pay Elizabeth forty-eight months of rehabilitative spousal support of $3250 per month.

Daniel appeals, contending the trial court miscalculated his income.

---

[1] While Daniel's averaged bonuses related to two separate employers, his experience with his new employer was not sufficient to provide reliable bonus figures and both employers were involved in the same industry. Using only the new employment compensation package would have provided a lower figure than would be equitable for purposes of calculating the child and spousal support obligations.

**II. Scope and Standard of Review.**

Our review is de novo. *See* Iowa R. App. P. 6.907. Prior cases, though helpful, have little precedential value because we must base our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983).

**III. Discussion.**

*A. Calculation of income.* To determine support orders we must first establish the parties' gross income. *See* Iowa Ct. R. 9.5 (stating net monthly income for child support purposes is gross monthly income minus applicable deductions); *Markey v. Carney*, 705 N.W.2d 13, 19 (Iowa 2005). The child support guidelines do not define gross income, but the courts have included such items as overtime income, incentive pay, and bonuses as gross income if this other income is "reasonably expected to be received in the future." *Markey*, 705 N.W.2d at 19 (*citing State ex rel. Hammons v. Burge*, 503 N.W.2d 413, 415 (Iowa 1993) (incentive pay); *In re Marriage of Brown*, 487 N.W.2d 331, 333 (Iowa 1992) (overtime); *In re Marriage of Lalone*, 469 N.W.2d 695, 698 (Iowa 1991) (bonus)).

> In each instance, the key to including the item of extra income primarily focused on whether it was reasonably expected to be received in the future. *See Seymour v. Hunter*, 603 N.W.2d 625, 626 (Iowa 1999) ("Income, for purposes of guidelines, need not be guaranteed. History over recent years is the best test of whether such a payment is expected or speculative."). If extra income is uncertain or speculative, or if it is an anomaly, it is excluded. *Brown*, 487 N.W.2d at 333. *If it is reasonably expected to be received, then it should be included in gross monthly income by averaging the extra income over a reasonable period of time so the amount included fairly reflects the amount that will be received.* *See Seymour*, 603 N.W.2d at 626 ("[T]he court should consider and average them as earnings over recent years and decide whether the receipt of an annual payment should be reasonably expected.").

> The same approach should be applied to extra income in the form of commissions in this case.

*Markey*, 705 N.W.2d at 19 (emphasis added).

Daniel does not dispute that his bonus pay should be included to determine his income for calculating his child and spousal support. His complaint rests on the amount of bonus income the district court used. Thus, the outcome of this appeal depends upon whether the district court erred in using a five-year average of Daniel's bonuses to arrive at a gross income figure.

As noted above, whether bonus pay is included depends upon "whether it [is] reasonably expected to be received in the future." *Id.* In *In re Marriage of Kupferschmidt*, 705 N.W.2d 327, 333-34 (Iowa Ct. App. 2005), this court wrote:

> In a case where the employment contract of the parent makes overtime pay inconsistent and where the bonus income was a one-time occurrence, it is reasonable for the district court to calculate the parent's income by averaging it over the term of the contract. "It is unrealistic and unfair to fix child support obligations based solely on the most recent periodic income amounts." . . . We also recognize the district court needs to be given some discretion in making computations.

(Citations omitted.)

1. *Child support.* Here, Daniel historically and consistently has earned a significant bonus. He argues that in his new employment that bonus will not be as great as it was in his former employment. However, in his first year with his new employer, he received an $85,000 one-time signing bonus plus a bonus exceeding the guaranteed $50,000. The bonus provisions in the contract upon which he relies relates to a position he no longer has; he is currently in a newly created position; and he received two pay raises in the first year with the new employer. Under these circumstances, we find no failure to do equity in the

trial court averaging his bonus income over a period of five years for purposes of child support. Daniel does not otherwise challenge the amount of child support ordered. We affirm.

2. *Spousal support.* As for spousal support, we have already determined the trial court did not err in determining Daniel's gross income. As for the amount and duration of spousal support, the trial court wrote:

> Although Elizabeth returned to the work force full-time in 2014, her current ability to earn more income is limited when compared to Daniel's ability. The parties have already stipulated to Elizabeth having primary physical care of the children. This will impact her ability to work more hours and earn more income for a significant period of time. Elizabeth testified at the time of trial that she had cut back on expenses in reasonable ways, but even with these cuts, Elizabeth could not sustain herself and the parties' children under the amount of support proposed by Daniel.
> Elizabeth's expenses are in line with what the parties spent during the marriage and the standard of living she and the parties' children enjoyed during the parties' marriage. Despite Daniel's contentions at trial, Elizabeth cannot provide for their children at the level of support Daniel proposes. Daniel, on the other hand, is capable of paying spousal support of $3250, as evidenced by his Affidavit of Financial Status. During the pendency of this matter, Daniel incurred no debt, other than a $5000 loan from his sister. . . .
> Finally, factoring the income tax consequences as indicated by Petitioner's Exhibit 12, Daniel's after tax income, even after payment of the child support at $2700 per month and spousal support of $3250 per month, is over $9000 per month. By contrast, Elizabeth's monthly income to support four people is $8,375— roughly $2000 per person. Further, the income tax calculations outlined in Petitioner's Exhibit 12 do not take into account the tax loss(es) Daniel will report in the years to come for Bear Grove Beef.
> Daniel has requested the court allow him to "true-up" his spousal support obligation yearly when he gets his bonus. The court finds this option would not be fair to Elizabeth, is not consistent with the way Daniel and Elizabeth budgeted during their marriage, and would not alleviate any potential future issues concerning Daniel's support obligations year to year.
> . . . .
> Based on these factors, the court finds it reasonable to continue the $3250 per month of spousal support amount set by the court's Temporary Order herein for a period of forty-eight months,

or four years. This should give Elizabeth sufficient time to reestablish herself in the marketplace at an income level more commensurate with her education and experience. This award also takes into consideration the needs of Daniel and Elizabeth's children as they mature and need less and less paid supervision (i.e., child care), which will allow Elizabeth flexibility to devote additional time to her work if need be and to otherwise advance herself in her career. This award also takes into consideration the court's award of the remaining balance Elizabeth owes her father under the loans she secured from him during the pendency of this matter, as discussed more fully in the following section.

Rehabilitative alimony supports an economically dependent spouse through a limited period of education and retraining. *In re the Marriage of Francis*, 442 N.W. 2d 659, 663 (Iowa 1989). Its objective is self-sufficiency. *Id.* In *In re Marriage of Becker*, 756 N.W.2d 822, 827 (Iowa 2008), the court gave the parties each more than 3.3 million dollars in the property settlement. Though the Court found that the former wife's property settlement would allow her to live comfortably, her earning capacity was less than ten percent of the former husband's. *Becker*, 756 N.W.2d at 827. Therefore, instead of forcing the wife to spend her nest egg for living and education expenses, the district court awarded her three years' of support of $8000 per month to allow the wife to complete her education and seven years at $5000 per month to give the wife time to develop her earning capacity. *Id.*

Here, the trial court observed that Daniel and Elizabeth will each leave this marriage with between $300,000 and $400,000 in assets. But some of the assets are not liquid, consisting of retirement accounts that cannot be accessed at this time by either party without payment of significant penalties and income taxes. In light of the difference in the parties' incomes, we find no reason to

disturb the court's award of spousal support, which is designed to get Elizabeth through a period where she will have less ability to develop her earning capacity.

Daniel also argues that his spousal support obligation should be deducted from the net income figure used to calculate child support.[2] In *In re Marriage of Lalone*, 469 N.W.2d 695, 697 (Iowa 1991), the district court considered the amount of spousal support paid to the custodial parent in determining the noncustodial parent's child support obligation because to do otherwise would have resulted in "substantial injustice" to the noncustodial parent. Our supreme court found that the guidelines give discretion to the district court in setting child support, "if the court finds such adjustment necessary to provide for the needs of the children and to do justice between the parties under the special circumstances of the case." *Lalone*, 469 N.W.2d at 697. In *In re Marriage of Miller*, 475 N.W.2d 675, 679–80 (Iowa Ct. App. 1991), this court, citing *Lalone*, found the trial court acted within its discretion where it did not consider the noncustodial parent's alimony obligation in calculating his child support obligation. The trial court did not find that including the alimony obligation would result in a substantial injustice to the paying parent. *Miller*, 475 N.W.2d at 680.

We accord the trial court considerable latitude in making factual determinations and will disturb the ruling only when there has been a failure to do equity. *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). While the district court does have discretion to subtract the current spousal support amount from income in the child support calculations if failure to do so would result in

---

[2] We note the spousal support was not added to Elizabeth's income for purposes of the child support calculation.

substantial injustice to either party or the child, we do not find such substantial injustice would occur in this case. The trial court adequately considered Daniel's request that his spousal support be deducted from his income for purposes of child support and arrived at an equitable result in rejecting the request.

*B. Trial attorney fees.* Daniel also complains the trial court abused its discretion in ordering him to pay $15,000 in Elizabeth's trial attorney fees. An award of attorney fees is discretionary. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). "Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." *In re Marriage of Kimbro*, 826 N.W.2d 696, 704 (Iowa 2013) (citation and internal quotation marks omitted). "To determine the ability to pay, we review the parties' entire financial picture, including their respective earnings, living expenses, and liabilities." *Id.* (citation and internal quotation marks omitted). We review the district court's grant of trial attorney fees for an abuse of discretion. *Id.* We conclude the district court did not abuse its discretion in the amount of trial attorney fees awarded to Elizabeth.

*C. Appellate attorney fees.* Elizabeth requests an award of appellate attorney fees in the amount of approximately $7400.

> Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. Factors to be considered in determining whether to award attorney fees include: "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."

*Sullins*, 715 N.W.2d at 255 (quoting *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005)). In light of the assets awarded and the parties' respective

abilities to pay, we order Daniel to pay $3000 in Elizabeth's appellate attorney fees.

**AFFIRMED.**