**IN THE COURT OF APPEALS OF IOWA**

No. 17-1375
Filed May 16, 2018

**SEAN PATRICK RYAN,**
        Plaintiff-Appellee,

**vs.**

**JESSICA S. WRIGHT,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Cass County, Gregory W. Steensland, Judge.

        Jessica Wright appeals the order modifying Sean Ryan's child visitation and support. **AFFIRMED AS MODIFIED AND REMANDED.**

        Earl B. Kavanaugh of Harrison & Dietz-Kilen, P.L.C., Des Moines, for appellant.

        Alexander E. Wonio of Hansen, McClintock & Riley, Des Moines, for appellee.

        Heard by Doyle, P.J., and Tabor and McDonald, JJ.

**DOYLE, Presiding Judge.**

"Are we there yet?" This familiar refrain must be heard often as the parties' children, now ages ten and nine, spend twenty hours cooped up in a car for each of their monthly forty-eight-hour weekend visits with their father. No doubt, these interstate highway treks back and forth between Colorado and Iowa are not great fun for the children. Even their father admits that "it's just rough on them."

Jessica Wright appeals following modification of the decree establishing custody, visitation, and support of the parties' minor children. Jessica argues the district court misused the term "physical care" in the modification order when referring to Sean Ryan's summer visitation with the children. She also argues the visitation schedule entered in the modification order is contrary to the children's best interests. Finally, Jessica argues the district court erred in calculating the amount of Sean's child support and in failing to require Sean to pay cash medical support for the children. Although Sean did not cross-appeal, he requests a different school-year/holiday visitation schedule than ordered by the district court. Both parties request an award of their appellate attorney fees.

### I. Background Facts and Proceedings.

Jessica and Sean are the parents of two children: J.A.W., born in 2007, and J.P.W., born in 2008. A 2015 decree established the children's custody, visitation, and support.[1] It provided for joint legal custody of the children with Jessica granted physical care. The decree granted Sean visitation on alternating weekends and

---

[1] Jessica appealed. *See Ryan v. Wright*, No. 15-0413, 2015 WL 6508703 (Iowa Ct. App. Oct. 28, 2015).

each Wednesday evening during the school year, with the parties alternating care of the children each week during the summer. The decree also ordered Sean to pay Jessica child support in the amount of $967.07 per month. In 2016, Sean petitioned to modify the custody decree based on Jessica's plans to move out of state. Jessica's family was purportedly relocating to Colorado, where they would establish a new scrap-metal business, and Jessica planned to continue to work for the family business. Jessica moved to the suburban Denver, Colorado area in the summer of 2016, a ten-hour drive from Sean's Anita, Iowa residence.

In June 2017, the district court entered its modification order. The court found that Sean failed to establish a substantial change in circumstances warranting modification of the children's physical care, but it determined Jessica's move to Colorado warranted a modification of the visitation provisions of the decree. The court modified the visitation schedule to provide Sean with one forty-eight-hour weekend of visitation per month during the school year. The court also granted Sean summer visitation beginning five days after the end of the school year and ending five days before the start of the next school year, with Jessica having the children one forty-eight-hour weekend during each of those months. The original decree's holiday visitation schedule was left undisturbed. The court also modified the child support provisions of the decree to provide Sean would pay child support in the amount of $524.76 per month. Jessica appeals the order, challenging the modification of the visitation and child support provisions of the decree.

**II. Scope of Review.**

Our review of equitable proceedings is de novo. *See* Iowa R. App. P. 6.907; *Wilker v. Wilker*, 630 N.W.2d 590, 594 (Iowa 2001). We review the entire record and decide anew the factual and legal issues preserved and presented for review. *See In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). Although our review is de novo, we afford deference to the district court for institutional and pragmatic reasons. *See In re Marriage of Morrison*, No. 16-0886, 2017 WL 936152, at *1 (Iowa Ct. App. Mar. 8, 2017). This means we give weight to the district court's findings of fact. *See In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). This also means we will affirm the district court unless the district court failed to do substantial equity. *See In re Marriage of Mauer, 874 N.W.2d 103, 106 (Iowa 2016); In re Marriage of Lukowicz*, No. 14- 0088, 2015 WL 162089, at *4 (Iowa Ct. App. Jan. 14, 2015) (using substantial equity standard). In exercising our review, "[p]rior cases are of little precedential value, except to provide a framework for analysis, and we must ultimately tailor our decision to the unique facts and circumstances before us." *In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995) (citing *In re Marriage of Will*, 489 N.W.2d 394, 397 (Iowa 1992)).

*Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017).

**III. Child Visitation.**

**A. Use of term "physical care."** Jessica first attacks the language used by the district court in modifying the decree with respect to child visitation. The modification order states, in pertinent part:

> The burden on Sean to change physical care is very high. He must prove a substantial change in circumstances. If he establishes that burden, he must then meet the additional burden of showing that he is somehow in a superior position to parent the children. There is no question that moving to Colorado 10 hours away is a change in circumstances. It is a little more difficult to determine whether that is the kind of substantial change necessary to meet Sean's burden. While this court finds the change significant, this court does not find it substantial, even though Jessica moved 10 hours away. This court finds it significant enough to modify the visitation provisions. In addition, there is no evidence before this court to show that Sean is somehow in a position to be a superior parent. There is no question that he loves his children and has a relationship that ought to

continue, but he is not in a superior position to parent. He fails on that burden also.

This court does find from the evidence that there should be an adjustment to the visitation, especially during the summer school visitation. This court will enter an order that modifies the current decree in that respect.

. . . .

1. The original decree is modified to provide that the parties shall have joint legal custody with Jessica retaining primary physical care[2] during the school year and Sean having primary physical care during the summer school vacation. Sean shall assume physical care of the children five days after the last day of school, and return physical care to Jessica five days before the start of school in the fall.

Jessica asserts the court use of the term "physical care" with regard to Sean's summer visitation is inconsistent with the court's ruling regarding Sean's failure to meet his burden to change physical care. In denying her motion to enlarge and amend the modification order, the district court stated on this issue, "The designation of Sean's parenting time as physical care instead of visitation is a distinction without meaning in the context of the court's order. It is clear as written and need not be changed."

The term "physical care" has a specific meaning in Iowa family law. "'Physical care' means the right and responsibility to maintain a home for the minor child and provide for routine care of the child." Iowa Code § 598.1(7) (2016). Where joint (or shared) physical care[3] is not warranted, like here, the court must

---

[2] "Primary physical care" is not defined in Iowa Code chapter 598 (2017); nevertheless, we recognize the term is commonly used by parties, their counsel, and the courts. The phrase was used in the original decree.

[3] Iowa Code section 598.1(4) defines joint physical care to mean

an award of physical care of a minor child to both joint legal custodial parents under which both parents have rights and responsibilities toward the child including but not limited to shared parenting time with the child, maintaining homes for the child, providing routine care for the child and under which neither parent has physical care rights superior to those of the other parent.

chose a primary caretaker who is solely responsible for decisions concerning the child's routine care, and visitation rights are ordinarily afforded a parent who is not the primary caretaker. *See In re Marriage of Hansen*, 733 N.W.2d 683, 691 (Iowa 2007). Thus the term is not applicable to the award of visitation.

In context, it is clear that the court did not modify the decree to provide shared physical care but rather modified the visitation provisions of the decree to provide Sean with extended summer visitation to compensate for the decrease in visitation during the school year. The court was unambiguous in stating that it was not modifying child custody. Nevertheless, the court's use of the term "physical care" with regard to Sean's summer visitation was incorrect.

**B. Standard for modification.** Jessica also argues the court applied the wrong standard in modifying visitation by finding her move to Colorado was "significant enough to modify the visitation provisions" rather than finding a "substantial" change in circumstances warranted modification. Although a party seeking modification of a decree's custody provisions "faces a heavy burden" of establishing "a substantial change in circumstances occurred after the decree was entered" and "a superior ability to minister to the needs of the [child]," *see In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016) (citation omitted), a less demanding burden applies when a parent seeks to modify child visitation, *see In re Marriage of Brown*, 778 N.W.2d 47, 51 (Iowa Ct. App. 2009); *In re Marriage of Salmon*, 519 N.W.2d 94, 96 (Iowa Ct. App. 1994). This is because continued association with the noncustodial parent is ordinarily in the children's best interests. *See Salmon*, 519 N.W.2d at 96. To modify child visitation, a parent need only show "there has been a material change in circumstances since the decree

and that the requested change in visitation is in the best interests of the [child]." *Id.* at 95-6 (citation omitted); *see also Smith v. Smith*, 142 N.W.2d 421, 422 (Iowa 1966) ("It seems readily apparent a much more extensive change of conditions would be required to support a change of custody than would be necessary to justify a change of visitation rights."). The court's finding that Jessica's move is "significant enough" to warrant modifying the child visitation provisions of the decree relates to this lowered burden of proof. On our de novo review of the record, we agree that Jessica's move of a distance involving ten hours of travel warrants modification of the visitation provisions of the decree.

**C. Modification of visitation schedule.** Finally, Jessica argues that the modified visitation schedule is not in the children's best interests. On appeal, she contends it is in the best interests of the children that both parents have equal time—six weeks each—with the children during the summer. She also argues that summer visitation with Sean should end at least two weeks prior to the start of the school year. At trial she testified she would like to continue alternating weeks in the summer as was provided in the original decree. She suggests nothing different on appeal. Characterizing the district court's order concerning school-year-weekend visitation as "disruptive," Jessica requests Sean's school-year-weekend visitations be shortened. Acknowledging that the holiday visitation schedule "was crafted for parties who originally lived in close proximity to one another in Iowa," and that "[g]iven the parties' current geographical distance from one another, it is simply not practical, nor in the minor children's best interests, to travel twenty (20) hours in a car to exercise an overnight with the other party," Jessica requests a modification of the holiday schedule to "provide for an equal division of those

school observed holidays that are longer in length, such as winter break, [T]hanksgiving break, and spring break." Sean asks us to affirm the district court, but without cross-appealing, suggests adoption of an alternate school-year weekend and holiday visitation schedule.

We begin by repeating an apt observation made under circumstances similar to those presented here—where the custodial parent and the noncustodial parent are separated by significant geographical distance:

> [We] think that it's unfortunate that the children are living as far away from the father in Iowa as they are but that's the way it is and that's the situation we find ourselves in.  The court can't change that.  [We] can't tell either of these people where they are going to live or why.  That's their own decision, again considering what they believe to be the best interests of the children.

*In re Marriage of Behn*, 385 N.W.2d 540, 542 (Iowa 1986) (quoting the trial court speaking directly to the parties immediately after hearing closing arguments in custody dispute).  It was Jessica's decision to move to Colorado that impedes Sean's regular interaction with the children.  So, until development of a Star Trek-like teleportation device, these kids are destined to spend countless mind-numbing hours on the interstate.

We do not have the power to resolve the conflict, or the geographical distance, between Jessica and Sean.  In the eyes of litigating parents, no court-imposed visitation schedule is ever perfect.  And although strict schedules never lend themselves well to the vagaries of life, the conflict between the parties necessitates a court-ordered visitation plan.  In crafting a visitation schedule, we recognize that it is the children who are not only the innocent victims, but who have

the most at stake in this controversy.  *See Ross v. Hoffman*, 372 A.2d 582, 584 (Md. Ct. App. 1977).

The legislature has directed the courts to award "liberal visitation rights where appropriate" in order to "assure the child the opportunity for the maximum continuing physical and emotional contact with both parents."[4]  Iowa Code § 598.41(1)(a). In determining what visitation is appropriate, our concern, once again, is the children's best interests.  *See In re Marriage of Stepp*, 485 N.W.2d 846, 849 (Iowa Ct. App. 1992).  Consequently, the court must fashion a visitation schedule that serves the best interests of the children.  *In re Marriage of Gensley*, 777 N.W.2d 705, 718 (Iowa Ct. App. 2009).

The schedule adopted by the district court results in the children spending far too many hours commuting long distances in a car, often during adverse weather conditions and for relatively short periods of visitation.  With all the above in mind, and the fact that the current visitation schedule is unworkable for the parties, we strive to recraft a visitation schedule that we believe to be in the children's best interests.

**1. Summer.**  We begin with the summer visitation.  As it currently stands, with the exception of Jessica's once-a-month weekend visitations, Sean has the children the entire summer break, from five days after the last day of school until five days before the start of school in the fall.  On one hand, the schedule "evens the score" to make up for Sean's lack of time with the children during the school

---

[4] Many non-custodial parents view this statement as an entitlement to equal time with their children.  In doing so, they often ignore the realities of their specific situation and take little to no consideration of their children's best interests.

year. On the other hand, the schedule effectively deprives Jessica of any meaningful time with her children during their summer recess from school. Furthermore, the schedule denies the children any meaningful contact with their friends during the summer and strips from them any opportunity to participate in summer social, recreational, or athletic activities in their home community. Balancing all the competing factors, we find it would be in the children's best interests to have some uninterrupted time with their father in the summer. This revised summer visitation schedule will allow the children to spend some sustained time with their father, while allowing them some of the break to relax at home with their mother and their friends.

We modify the district court's summer visitation schedule as follows: Sean shall have six uninterrupted weeks of visitation with the children during the summer vacation period June through August. The visitation period shall end at least two weeks prior to the first day of classes at start of the school year in the fall. The parties will alternate first choice of desired summer visitation with Sean having first choice in even numbered years and Jessica in odd numbered years. The preferred party must submit desired dates in writing to the alternate party no later than May 1 each year. Sean shall be responsible for picking up the children at the commencement of the visitation, and Jessica shall be responsible for picking up the children at the conclusion of the visitation. The parents are encouraged to meet half way for the exchange of the children.

**2. School year.** Crafting a suitable visitation schedule for the school year is more problematic. In an understatement, Sean recognizes the current school-year-weekend visitation schedule "pose[s] significant challenges for the children

and the parents." The schedule provides Sean with one weekend visitation each month during the school year. For each visit, he picks up the children in Colorado at 6:00 p.m. on Friday and Jessica picks up the children in Iowa for their return trip to Colorado at 6:00 p.m. on Sunday. As mentioned earlier, the children must spend twenty hours in a car for each forty-eight hour visit, with ten of those in-car hours being a part of the visit. Each parent must spend twenty hours on the road for each visit—Sean must travel ten hours from Iowa to be in Colorado for the 6:00 p.m. pickup on Friday and then another ten hours back to Iowa, and Jessica must spend ten hours driving from Colorado to be in Iowa for her 6:00 p.m. pickup on Sunday and then another ten hours back to Colorado, arriving home at 4:00 a.m. Monday morning. Jessica legitimately complains,

> Practically speaking, it is not possible for Jessica to pick up the minor children on a Sunday at 6:00 p.m. in Iowa, drive ten (10) hours to her home in Colorado, and expect the children to be well-rested and prepared for school on Monday. The present schedule ensures that the minor children will experience disruption and behavioral issues by ensuring that they will be forced to attend school on Monday mornings with little quality sleep and the possibility of incomplete homework assignments.

Sean also complains the schedule "can be a very problematic situation for the kids and parents on a standard weekend given the long hours the parties would drive in order for Sean to spend extraordinarily limited quality time with his children."

Jessica requests the court to set Sean's school-year visitation time to end at noon on Sunday "to allow her more time to get the minor children back to Colorado in a timely manner so as not to disrupt their school routine." Such a schedule would reduce Sean's weekend visits to forty-two hours each. Taking into

account the in-car driving time and sleeping time, precious few hours are left during the visits for Sean to spend quality time with the children.

Although Sean did not cross-appeal, he proposes a school-year visitation schedule that purportedly corresponds to the children's school district calendar that includes a number of built-in extended weekends. He did not trot out this proposal until long after the hearing was over and the court had entered its modification order. In his response to Jessica's motion to enlarge, amend, or modify, Sean, for the first time, argued, "[e]xercising visitation during these times would better suit the best interests of the parties' children while promoting quality time with both parents. A review of the district's school calendar indicates that every month except May has a long weekend." He proposed that on those extended weekends, he have visitation from school out the day before the weekend to noon the day before school resumes.[5] He makes the same argument on appeal while simultaneously asking us to affirm the district court. Unfortunately, the school district calendar is not a part of our record, and we cannot consider it. *See* Iowa R. App. P. 6.801; *In re Marriage of Keith*, 513 N.W.2d 769, 771 (Iowa Ct. App. 1994) ("We are limited to the record before us and any matters outside the record on appeal are disregarded."); *State v. Weiland,* 202 N.W.2d 67, 69 (Iowa 1972) (noting appellate courts cannot consider facts that are outside of the record).

We modify the district court's school-year-weekend visitation schedule as follows: Sean shall have visitation one weekend a month from 6:00 p.m. on the school day preceding the weekend until noon the day before the next school day.

---

[5] The proposal he outlines in his appeal brief appears to follow a September 2017 to May 2018 calendar.

Sean shall exercise his visitation the second full weekend of each month, unless otherwise agreed by the parties.  Sean shall be responsible for picking up the children at the commencement of the visitation, and Jessica shall be responsible for picking up the children at the conclusion of the visitation.  The parents are encouraged to meet half way for the exchange of the children.  Should Sean exercise a school-year-weekend visitation in Colorado, the visit shall conclude at 6:00 p.m. the day before a school day.

**3. Holidays.**  We next turn to the holiday visitation schedule.  We modify the holiday visitation schedule as follows: In odd numbered years, Sean shall have visitation during Spring/Easter break and Thanksgiving break.  Sean's visitation period for the Spring/Easter and Thanksgiving breaks begins at 6:00 p.m. on the last day of school before the break and ends at noon the day before school starts at the end of the break.  Christmas break will be split 50–50: Part I begins at 6:00 p.m. on the last school day before Christmas break and ends at 6:00 p.m. on December 26.  Part II begins at 6:00 p.m. December 26 and ends at noon the day before school starts at the end of the break.  In every even numbered-year, Jessica will have the children for Part I and Sean will have the children for Part II.  In odd-numbered years, Sean will have the children for Part I and Jessica will have the children for Part II.  Sean shall be responsible for picking up the children at the commencement of the visitation, and Jessica shall be responsible for picking up the children at the conclusion of the visitation.  The parents are encouraged to meet half way for the exchange of the children.

**4. Miscellaneous.**  Anytime Sean is in the Denver, Colorado area, Jessica shall be flexible to allow Sean visitation with the children.  Anytime Jessica is in

Iowa with the children, she shall inform Sean and, if reasonable, allow Sean to exercise some visitation with the children.

The above schedule for summer, school-year-weekend, and holiday visitation may be amended from time to time, upon mutual agreement of the parties, based upon the schedule of the parties and the needs, schedule, and best interests of the minor children. The parties shall cooperate and make appropriate adjustments to the parenting time schedule as is reasonable. Given the complexities of the revised visitation schedule, the uncertainty of inclement weather, illness, and the other vagaries of work and family life, we would encourage the parents to be flexible and to accommodate each other's visitation time with their children, as permitted by the circumstances. *See In re Marriage of Muell,* 408 N.W.2d 774, 777 (Iowa Ct. App. 1987).

The holiday visitation shall take priority over the regular weekend visitation. In other words, the holiday visitation shall be in lieu of, and not in addition to, school-year-weekend visitation in the month the holiday visitation begins.

The court-imposed visitation schedule should be considered as a minimum schedule. In addition to the court-imposed visitation time, it is recognized that the parties may extend or exercise such further and additional parenting time as they may both mutually agree upon.

**IV. Child Support.**

Jessica also raises the issue of child support. She challenges the modification of Sean's child-support obligation. Child support provisions of a decree may also be modified when there has been a substantial change in circumstances. *See* Iowa Code § 598.21C(1). In determining whether there has been a substantial change in circumstances, we look at changes in "employment, earning capacity, income, or resources of a party." *Id.* § 598.21 C(1)(a); *McKenzie*, 709 N.W.2d at 531. Sean must establish the change in circumstances by a preponderance of the evidence. *See In re Marriage of Jacobo*, 526 N.W.2d 859, 864 (Iowa 2005).

With regard to Sean's child-support obligation, the district court found:

> Child support is a bit of an issue in this case. There was questionable evidence presented as to the relative income of both Sean and Jessica. This court finds that Jessica's income is not just $600/week. This court finds that there is an additional $2000 of income in the gas, vehicle, and housing provided to her by her parents. Under these circumstances, this court will attribute $60,000 of annual income to Jessica.
> Sean's income tax return shown as Exhibit 1A shows a profit of just over $11,000. However, Sean seems to acknowledge that his income ought to be higher than that and suggested $21,000. This would be a little more than $10/hour for a 40-hour week. Sean is capable of making more than that. This court will attribute $40,000 of annual income to Sean. Child support and cash medical support will be calculated and ordered by this court according to those income figures. In addition, Sean will be entitled to a 15% reduction due to extraordinary visitation as set out in this court's order.

Jessica argues the district court incorrectly determined the parties' earnings. She argues that because Sean agreed to pay $750 per month while the modification action was pending, "the Court should therefore impute a higher wage to Sean that equates to a monthly child support of $750.00." In other words,

Jessica asks us to work backward from the amount of child support to determine Sean's earnings.

In determining whether to modify child support, the court does not only consider the parent's actual earnings; it also considers whether the parent's decrease in earnings is voluntary or self-inflicted. *See McKenzie*, 709 N.W.2d at 533. "[A] party may not claim inability to pay child support when that inability is self-inflicted or voluntary." *In re Marriage of Duggan*, 659 N.W.2d 556, 562 (Iowa 2003) (citation omitted). In making the determination of whether a parent's reduction in income is voluntary or self-inflicted, we look at the unique circumstances of each case. *See Walters*, 575 N.W.2d at 741 (setting forth cases where modification has been granted and where modification has been refused). In determining whether to impute income to a parent, one of our considerations is whether the reduction in income was done through an improper intent to deprive the children of support or in reckless disregard for the children's well-being. *See In re Marriage of Swan*, 526 N.W.2d 320, 324 (Iowa 1995).

Sean's 2016 federal income tax return Schedule C shows a gross profit of $21,045 and net profit of $11,869. His adjusted gross income for the year was $11,030. At trial Sean was asked if he was living on $11,000 a year. He didn't think so; he thought the correct amount was "around $21,000."[6] Then asked, "So for child support purposes, you think that you should be put in at $21,000?," Sean responded, "I think so." Basically, that's it for the record evidence regarding Sean's current income. There are no allegations, nor evidence that Sean is

---

[6] The district court noted, "This would be a little more than $10/hour for a 40-hour week."

underemployed or that he has self-inflicted a reduction in income. Nevertheless, the district court found that Sean was capable of earning $40,000—$29,000 more than the $11,000 in income he reported earning in 2016 and $19,000 more than the $21,000 figure that Sean suggested be imputed to him. Upon our de novo review, we conclude the district court failed to do substantial equity in imputing $40,000 annual income to Sean. The record evidence supports imputation of $21,000 annual income. We must therefore remand for calculation Sean's child-support obligation based upon imputation of $21,000 annual income to Sean.

Jessica also argues the court erred in granting Sean a fifteen percent credit for extraordinary visitation. Iowa Rule of Court 9.9 provides, "If the noncustodial parent's court-ordered visitation exceeds 127 days per year, the noncustodial parent shall receive a credit to the noncustodial parent's share of the basic support obligation . . . ." The rule further provides that parents with court-ordered visitation of between 128 and 147 days per year are entitled to a fifteen percent visitation credit. Iowa R. Ct. 9.9. For the purpose of the credit, "days" means "overnights spent caring for the child." *In re Marriage of Jones*, 653 N.W.2d 589, 593 (Iowa 2002). Jessica claims that Sean is not entitled to a credit for visitation because his visitation "does not amount to the number of overnights required to qualify for a fifteen percent reduction." She calculates that Sean receives seventy-seven overnight visits during summer and another eighteen overnight visits during the school year. Jessica argues that even factoring in holiday visits, the number of visits "fall well short of" 128 overnight visits as required for by rule 9.9 to receive a fifteen-percent credit. We agree. And because the number of overnight visits

provided in our modification of the decree fall short of the 128 days needed to apply the extraordinary visitation credit, the credit should not be applied on remand.

Finally, Jessica argues the district court erred in failing to require Sean to pay cash medical support. Jessica raised the issue of medical support in her motion to enlarge and amend. In its ruling on the motion, the district court stated, "The original decree did not address reimbursement of unpaid medical expenses and the parties request the court to do that now. Any unpaid medical expenses shall be paid 1/2 by each party." We find no error.

### V. Appellate Attorney Fees.

Both parties request an award of their appellate attorney fees. Jessica's appellate attorney fees amount to $12,063. Sean has incurred appellate attorney fees of $8200.

"In a proceeding to determine custody or visitation, . . . the court may award the prevailing party reasonable attorney fees." Iowa Code § 600B.26. The decision to award appellate attorney fees is discretionary. *See Markey v. Carney*, 705 N.W.2d 13, 26 (Iowa 2005). In determining whether to award appellate attorney fees, we consider "the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal." *Id.* (citation omitted).

Based on the foregoing, we decline to award either party appellate attorney fees.

**AFFIRMED AS MODIFIED AND REMANDED.**