# IN THE COURT OF APPEALS OF IOWA

No. 18-0621
Filed May 1, 2019

**KAREN K. PISTEK,**
        Plaintiff-Appellant,

**vs.**

**DALTON S. KARSJENS,**
        Defendant-Appellee.

_____

Appeal from the Iowa District Court for Monroe County, Lucy J. Gamon,

Judge.

Karen Pistek appeals the district court order establishing paternity, custody,

visitation, and support of the child she shares with Dalton Karsjens.  **AFFIRMED**

**AS MODIFIED.**

Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, for appellant.

Jenna K. Lain of The Law Office of Jenna K. Lain, PLLC, Corydon, for

appellee.

Considered by Vaitheswaran, P.J., and Potterfield and Doyle, JJ.

**DOYLE, Judge.**

Karen Pistek and Dalton Karsjens are the parents of O.K.K., who was born in 2016. In December 2016, Karen filed a petition to establish paternity, custody, visitation, and support of O.K.K. Following trial, the district court entered an order establishing Dalton's paternity and granting him physical care of O.K.K. On appeal, Karen contends the court abused its discretion in denying her request for an additional day of testimony. She asks us to grant her physical care of the child or, in the alternative, to grant her additional visitation. Finally, she contends the court erred in calculating child support and reserving jurisdiction on the issue of a post-secondary-education subsidy. We consider each argument in turn.

**I. Additional Testimony.**

We first consider Karen's challenge to the district court's denial of her request to add a third day of testimony. Karen's attorney first made the request on the afternoon of the second day of trial, but another case was set to begin trial the following day. Her attorney then asked if the court would consider scheduling a third day of testimony at a later date, and the court ventured that a date would not be available for "four or five months." After Dalton's attorney objected to having a lengthy gap between testimony, the court denied the request. After the trial concluded, Karen filed a motion to reconsider her request asserting she "had approximately 16 witnesses that were not able to testify on her behalf due to time constraints." The court denied the motion. We review the district court's determination to place time limitations on the hearing for an abuse of discretion. *See In re Marriage of Ihle*, 577 N.W.2d 64, 67 (Iowa Ct. App. 1998) ("It is generally recognized that matters relating to the course and conduct of a trial, not regulated

by statute or rule, are within the discretion of the trial judge."); *In re Marriage of Rebouche*, 587 N.W.2d 795, 798 (Iowa Ct. App. 1998) ("[W]e afford trial judges wide discretion over the course and conduct of a trial, including such issues as the number of witnesses on a certain point."). This discretion is necessary to allow the trial court "to prevent an undue waste of time, avoid needless presentation of cumulative evidence, and to responsibly manage the stream of cases through the spectrum of justice." *Ihle*, 577 N.W.2d at 67. We will find an abuse of discretion only if the district court exercises its discretion "on grounds or for reasons that are clearly untenable or to an extent clearly unreasonable." *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 484 (Iowa 2012).

In its written ruling denying Karen's motion to reconsider, the district court noted that the parties indicated the trial should be set for two days when they filed the trial scheduling and discovery plan in August 2017. In September 2017, the district court set the matter for a two-day trial. Noting that the case involved the custody of one minor child, the court observed: "Such cases are very rarely set for more than two days in this district. Such cases are sometimes set for three days upon the advance request of the parties. No such request was made in this case." Rather, Karen did not request an additional day of testimony until the afternoon of the second day of trial. The court noted its schedule did not allow for a third day of trial and that it was likely a third day could not not be scheduled for several months, given the court scheduling in the district. It also noted that it did its best to equitably divide the time available to the parties, who received the same amount of time to present evidence at trial. Concluding that "[i]t would not be in the best interest of the minor child to continue the case to a later date for additional

evidence or testimony," the court denied the motion. We find no abuse of discretion.

## II. Physical Care.

We review custody determinations de novo. *See Mason v. Hall*, 419 N.W.2d 367, 369 (Iowa 1988). Because the district court had the opportunity to listen to and observe the parties and witnesses, we give weight to its fact findings, especially when considering witness credibility. *See McKee v. Dicus*, 785 N.W.2d 733, 736 (Iowa Ct. App. 2010). However, we are not bound by them. *See id.*

Our first and governing consideration is the best interests of the child. *See* Iowa R. App. P. 6.904(3)(o). Our goal is to place the child in the care of the parent who is best able to minister to the child's long-term best interests. *See In re Marriage of Winter*, 223 N.W.2d 165, 166 (Iowa 1974). In making this determination, we consider the list of factors set forth in Iowa Code section 598.41 (2017), along with other relevant factors. *See* Iowa Code § 600B.40(2) (directing the court to apply the provisions of section 598.41 in determining custody in paternity actions); *In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007).

> The court, insofar as is reasonable and in the best interest of the child, shall order the custody award . . . which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents . . . , and which will encourage parents to share the rights and responsibilities of raising the child unless direct physical harm or significant emotional harm to the child is likely to result from such contact with one parent.

Iowa Code § 598.41(1)(a). Our objective is to place the child in the environment most likely to foster physical and mental health, as well as social maturity. *See Phillips v. Davis-Spurling*, 541 N.W.2d 846, 847 (Iowa 1995).

In determining which parent is better able to minister to O.K.K.'s long-term best interests, the district court weighed each of the twelve factors set forth in *Winters* in its detailed ruling. The court found: "Both Karen and Dalton have shown that they can be competent caretakers for OKK. Both have suitable homes for OKK to live in. Both are well bonded to OKK and love her very much." However, it found that Karen "has a history of instability and impulsivity," while Dalton "has shown himself to be a very hardworking and stable person, given his young age." More importantly, the court found that Karen has a history of discouraging Dalton's attempts to parent while Dalton "[does] not impose[] any similar roadblocks to Karen's role as a mother." Coupled with the fact that O.K.K. was well bonded with Dalton's younger child, who also lives in the home, the court found O.K.K.'s best interests would be served by granting Dalton physical care.

Affording the district court's findings the deference they are due, we agree with its determination that Dalton has shown he is better able to minister to O.K.K.'s long-term best interests. Accordingly, we affirm the physical-care provision.

**III. Visitation.**

The district court ordered that until O.K.K. begins preschool or school, visitation with Karen would occur on alternating weekends "from Friday at 6:00 p.m. until Monday at 6:30 p.m." Once O.K.K. is enrolled in preschool or school, the visitations "shall end on Sundays at 6:30 p.m. unless the Monday is a school holiday, in which case the visitation shall end on Monday at 6:30 p.m." The court also ordered that Karen be allowed daily phone calls with O.K.K. in addition to "a midweek visitation by Face Time, Skype, or a similar digital provider where she can interact with the child face-to-face."

Karen challenges the visitation schedule ordered by the district court, arguing it does not maximize her contact with O.K.K. The legislature has directed the courts to award "liberal visitation rights where appropriate" in order to "assure the child the opportunity for the maximum continuing physical and emotional contact with both parents." Iowa Code § 598.41(1)(a). In determining what visitation is appropriate, our concern, once again, is the child's best interests. *See In re Marriage of Stepp*, 485 N.W.2d 846, 849 (Iowa Ct. App. 1992). Consequently, the court must fashion a visitation schedule that serves the best interests of the child. *In re Marriage of Gensley*, 777 N.W.2d 705, 718 (Iowa Ct. App. 2009). Again, we give deference to the district court's opportunity to view the witnesses and determine the facts. *See Nicolou v. Clements*, 516 N.W.2d 905, 906 (Iowa Ct. App. 1994).

Karen requests that she receive, "at a minimum," visitation with O.K.K. "every Thursday overnight and alternating weekends Thursday through Monday." We disagree. Karen resides in Albia and Dalton resides in Leon. It takes approximately one hour and twenty minutes to drive between their homes. Considering the child's young age and the distance between the parties' homes, we find the visitation schedule set forth in the court's order is in the child's best interests and affirm.

**IV. Child Support.**

The district court ordered Karen to pay $349.11 per month in child support. It determined that Karen's total gross annual income is $20,800. The court's calculation was based on Karen's testimony that she works thirty hours per week at Casey's earning $10 per hour, which amounts to $15,600 gross income

annually. Karen also testified that she works ten to fifteen hours per week at White Buffalo Restaurant earning a minimum of $7.25 per hour and, with tips added in, about $10 per hour. Based on this testimony, the court determined her earnings from the restaurant amount to $5200 in gross income annually. The court determined that Dalton's gross annual income is $39,312 per year based on his fulltime work at Osceola Foods earning $18.90 per hour. Although Dalton earned $53,000 in one year because of overtime, the court did not set his income higher because it found Dalton testified that such a large amount of overtime may not be available to him in the future. The court observed:

> In the past year, Dalton has become the primary caretaker of two very young children. Given these additional obligations, the Court does not expect Dalton to continue to work a lot of overtime, even if it is available to him. It will be to his children's advantage to spend as much time as possible with them while they are young. Dalton asked that his income be limited to $40,000 per year for child support purposes, and the Court finds that this request is reasonable.

"In Iowa, child support is calculated using the child support guidelines." *In re Marriage of Erpelding*, 917 N.W.2d 235, 245 (Iowa 2018); *see also* Iowa Code § 598.21B(1); Iowa Ct. R. 9.2. "The purpose of the guidelines is to provide for the best interests of the children by recognizing the duty of both parents to provide adequate support for their children in proportion to their respective incomes." Iowa Ct. R. 9.3(1). "To compute the guideline amount of child support," the district court must first compute the adjusted net monthly income of each parent. Iowa Ct. R. 9.14. That amount is ascertained by first determining each parent's gross monthly income. *See* Iowa Ct. R. 9.14(1). Gross monthly income is the "reasonably expected income from all sources." Iowa Ct. R. 9.5(1).

Karen challenges the district court's calculation of her child support obligation, first arguing that the district court erred in calculating the amount of her child support obligation by imputing to her more income than she actually earns. "[T]he court shall not impute income" to a party "except . . . [p]ursuant to agreement of the parties, or . . . [u]pon request of a party, and a written determination is made by the court under rule 9.11." Iowa Ct. R. 9.5(1)(d)(1), (2). Rule 9.11(4) permits the court to

> impute income in appropriate cases subject to the requirements of rule 9.5. If the court finds that a parent is voluntarily unemployed or underemployed without just cause, child support may be calculated based on a determination of earning capacity. A determination of earning capacity may be made by determining employment potential and probable earnings level based on work history, occupational qualifications, prevailing job opportunities, earnings levels in the community, and other relevant factors. The court shall not use earning capacity rather than actual earnings or otherwise impute income unless *a written determination is made that, if actual earnings were used, substantial injustice would occur or adjustments would be necessary to provide for the needs of the child(ren) or to do justice between the parties.*

(Emphasis added); *see also In re Marriage of McKenzie*, 709 N.W.2d 528, 533 (Iowa 2006).

We find the district court's determination of Karen's income was based on her testimony regarding her current earnings. Although the amount of hours she works at each job fluctuates, Karen testified that she typically works forty hours per week. She also testified that although her earnings at the restaurant vary, she would earn approximately $10 per hour with tips. Karen agreed that her gross annual income would be $20,800. The court properly used this amount to calculate her child support obligation.

Karen also argues that the district court erred in ignoring the amount of Dalton's overtime earnings when determining his annual gross income. "Overtime wages are not excluded as income. Overtime wages are within the definition of gross income to be used in calculating net monthly income for child support purposes." *In re Marriage of Brown*, 487 N.W.2d 331, 333 (Iowa 1992). However, "in circumstances where overtime pay appears to be an anomaly or is uncertain or speculative, a deviation from the child support guidelines may be appropriate. *Id.* Furthermore, "a parent's child support obligation should not be so burdensome that the parent is required to work overtime to satisfy it." "[T]he burden is on the recipient of the income to establish that it should be excluded from gross income as uncertain and speculative." *Markey v. Carney*, 705 N.W.2d 13, 19 (Iowa 2005).

Dalton earned $53,164.25 in 2016 when he worked "an awful lot of overtime." O.K.K. was born in November 2016. In 2017, Dalton's income decreased to $46,505.56. Although he still worked "quite a bit" of overtime in 2017, Dalton testified that the circumstances were unique because he was covering shifts for a co-worker who needed time off to attend to a sick loved one and because he was trying to earn extra income to pay his attorney fees. Dalton's son was born in the latter half of 2017. Based on the circumstances cited by the district court, it is reasonable to determine Dalton's gross annual income to be $40,000.[1] Accordingly, we affirm the portion of the court's order relating to child support.

---

[1] Because this is the circumstance anticipated at the time of the order, any significant deviation from this amount would be grounds for a modification of Karen's child support obligation. *See* Iowa Code § 598.21C(1) (providing the court may modify child support orders when there is a substantial change in circumstances).

## V. Post-Secondary Education Subsidy.

The statutory obligation to provide post-secondary education is contained in our dissolution of marriage statute. Iowa Code §§ 598.1(8), 598.21F. This support obligation applies only to individuals who were once married. *See Johnson v. Louis*, 654 N.W.2d 886, 890–91 (Iowa 2002) (rejecting an equal protection challenge to this limitation). Because there is no common law or statutory right to such a subsidy for children born to unmarried parents, *see id.* at 888, we modify the order to eliminate the postsecondary education subsidy.

## VI. Attorney Fees

Both parties request an award of their appellate attorney fees. We may award the prevailing party reasonable attorney fees. *See* Iowa Code § 600B.26. Whether to award attorney fees is a matter of discretion with our court. *See Markey*, 705 N.W.2d at 26. In determining whether to award attorney fees, we consider "the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal." *See id.* (citation omitted). Although Dalton was successful in the appeal, his need and Karen's ability to pay weigh against an award of appellate attorney fees. We decline to award either party appellate attorney fees.

**AFFIRMED AS MODIFIED.**